NEW-YORK,
May, 1811.

DENN
v.
WYNKOOP.

DENN, *ex dem.* DEMAREST and Wife, *against* WYNKOOP.

*A.* and his wife, in 1771, executed a mortgage in fee, of the land of the wife, to *B.*, and *A.* afterwards, in 1788, for the consideration of 125 pounds, granted and released the premises to *B.* the mortgagee, his heirs and assigns, for ever; and *B.* retained the mortgage in his hands, and made an endorsement thereon, by which he covenanted not to bring any action against *A.* or his representatives, for the money due on the mortgage, and declaring that the mortgage was kept on foot, merely to protect the title of *B.* and his heirs in the premises. In an action of ejectment, bro't by *A.* and wife, against a person claiming under *B.* it was held, that the covenant endorsed on the mortgage was no satisfaction or discharge of the mortgage, in law or equity; but the mortgage being unredeemed, the title under it, set up by the defendant claiming under *B.*, was a good and valid defence.

Whether the mortgage is now redeemable, or not, is a question for the court of chancery to decide.

THIS was an action of ejectment, brought to recover one half of the premises, in the possession of the defendant.

The cause was tried before the *Chief Justice*, at the *New-York* sittings, in *December*, 1810. A verdict was taken, by consent, for the plaintiff, subject to the opinion of the court, on a case, containing the following facts: *Philip Minthorne* was seised of a tract of land of which the premises in question are a part; and on the 18th *August*, 1732, devised his real and personal estate to his wife, during her widowhood, and the remainder to his children, then living, or thereafter to be born of his said wife, to be equally divided between them. The testator died leaving nine children, four sons and five daughters. The children having obtained from the widow a release of all her interest in the estate, made a division thereof, and executed a deed of partition, dated 30th *October*, 1765. *Hannah*, one of the daughters, having, before the death of the testator, married *Wiert Banta*, he and his wife were one of the parties to the deed, which recited, among other things, that *Wiert Banta* and his wife had drawn to their share one equal ninth part of the estate, which was particularly bounded and described. And the other children, parties also to the deed of partition, grant, bargain, sell, aliene, release and confirm " unto the said *Wiert Banta* and his wife, in their actual possession, now being by virtue of the premises, and to their heirs and assigns for ever; all," &c. (describing the premises in question,) " to have and to hold the said lots," &c. " unto the said *Wiert*

*Banta* and *Hannah* his wife, their heirs and assigns, to the only proper use and behoof of the said *Wiert Banta* and *Hannah* his wife, their heirs and assigns for ever, in severalty." The deed contained mutual covenants, as to title and quiet enjoyment, &c.

*Hannah*, the wife of *Wiert Banta*, had three children, *Hannah*, *Frances*, and *Catharine*. *Hannah* married one *Allington*, and lived on the premises during the *American* war, but left the country with her husband, at the evacuation by the *British*, and had not been heard of for many years, and was supposed to have died, without issue. *Frances* married *Nicholas Nagel*. *Catharine* married one *Lozier*, and died in 1782, about four years after the death of her mother. *Lozier* is still living. *Catharine* left a daughter named *Hannah*, who was born about a year before the death of her mother, and afterwards married *John Demarest*, the lessor.

It was proved, on the part of the defendant, that *Wiert Banta* and his wife, on the 29th *March*, 1771, executed a mortgage in fee of the premises in question, to *Gabriel Ludlow*, to secure the payment of 300 pounds with interest. The mortgage was duly registered, the 30th *March*, 1771, and recited the seisin of the ancestor, *Philip Minthorne*, his death, and the deed of partition. The mortgage contained a covenant, on the part of *Wiert Banta*, his heirs, executors, &c. to pay the money; and a power from *Banta* and wife to the mortgagee, in case of default, to sell the premises, and the surplus money, after paying the debt and charges, was to be paid over to *Banta*. *Daniel Ludlow*, one of the children of *Gabriel Ludlow*, became legally possessed of the bond and mortgage; and *Wiert Banta*, *Nicholas Nagel*, and *Frances* his wife, on the 7th *May*, 1788, for the consideration of 125 pounds, granted, bargained, sold, released, and confirmed the premises to *Daniel Ludlow*, his heirs and assigns for ever, with the usual covenants of seisin, against encumbrances (except the said mortgage) and warranty. On

the back of the mortgage was the following endorse-
ment, in writing, dated 7th *May*, 1788, duly executed
by *Daniel Ludlow*.  " I do hereby covenant and agree,
to and with the within-named *Wiert Banta*, that no ac-
tion shall be brought against the said *Wiert Banta*, his
heirs, executors or administrators, for the money, with-
in mentioned, or any interest thereon; this mortgage be-
ing only kept on foot, to protect the estate of me and
my heirs and assigns, in the premises, within granted
and described."  *Daniel Ludlow* conveyed the premises
in fee, to *Petrus Stuyvesant*, who, afterwards, conveyed
them in fee, to the defendant.  *Ludlow*, and those
claiming under him, have been in possession since the
7th *May*, 1788.

   *D. B. Ogden* and *Boyd*, for the plaintiff.  Though the
deed of partition grants the premises to *Wiert Banta* and
his wife, to hold to them, their heirs and assigns for ever;
it is evident from the whole tenor and language of the
deed, that it was intended merely for the partition of
the estate, held in common among the children of *Philip
Minthorne*, so that each of the children might hold in se-
veralty, what was before held in common.  It was not in-
tended that any estate should be granted or vested in
*Wiert Banta;* and the deed ought to be so construed as to
carry into effect the manifest intent of the parties.

   The word *grant* does not necessarily mean a grant *in
fee.*  It may be used, at the election of the party, for a
confirmation or surrender.*

   The words *bargain* and *sale* have been introduced
since the statute of uses, and are merely to declare the
use.  The term *release* has no operation; for one te-
nant in common cannot release to another.†  The word
" confirm" creates no new estate; it only makes the for-
mer estate more sure.  But it may, perhaps, be said,
that by the *habendum*, an estate of inheritance is vested
in *Banta* and his wife; but if the *habendum* is repugnant
to the premises, it is inoperative.‡  That there is a cove-

* *Co. Litt.* 301.
b. 302. a. 2
*Saund.* 96. *note*
1.

†*Co. Litt.* 200. b.

‡ *Perkins*, 161.

nant of warranty on the part of *Banta* and wife, proves nothing, for every partition implies, and has annexed to it, a warranty in law.* We contend, then, that the words used in the partition do not create or vest any estate in *Banta*, the husband, but merely confirm the interest of the wife in severalty. The next point is, whether *Hannah*, the wife, has done any thing to bar her heir at law.

The covenant endorsed on the mortgage, we contend, amounts to a release of the debt; and the mortgage or security, which is the incident, is thereby extinguished and gone.† A covenant perpetual not to sue, is a defeasance or release.‡ Can, then, a mortgage executed by the wife, which has been satisfied, be used in bar of her heirs? A reconveyance by the mortgagee is not necessary to revest the estate. The moment the debt was released, or the money was paid, there was an end to the mortgage; and the estate of the mortgagor remains as if no mortgage had ever been executed.

*Slosson* and *Hoffman*, contra. Here was a mortgage in fee; and the mortgagee in possession from 1798; the money not having been paid, the legal estate became absolute in the mortgagee. The equity of redemption was reserved, by the mortgage, to *Wiert Banta*, and he released it to the mortgagee in possession, so that there is a complete conveyance of the legal title and estate to *Ludlow*; and the heirs of *Banta* and wife, must be for ever barred. Where the legal estate is out of the lessor in ejectment, the plaintiff cannot recover.§

The covenant endorsed on the mortgage does not, in terms, or on the face of it, amount to a release; it can be a release only, in effect, or by implication. A covenant not to sue one of two obligors is not a release, but an agreement.¶ If the party has any further right than that against which he covenants, it is not a release, but a covenant.

NEW-YORK, May, 1811.

DENN
v.
WYNKOOP.

* 4 *Cruise*, 143. e. 8. s. 10.

† 1 *Johns. Rep.* 590. 4 *Johns. Rep.* 42.
‡ 5 *Bac. Abr.* 683. (*Release*, A. 2.)

§ 5 *East*, 138. 7 *Term Rep.* 49. *Bull. N. P.* 110. 3 *Johns. Rep.* 386. 2 *Johns. Cases*, 321. 2 *Johns. Rep.* 84. 221.

¶ 7 *Johns. Rep.* 207. 8 *Term Rep.* 168. 12 *Mod.* 556. 1 *Ld. Raym.* 690.

NEW-YORK,
May, 1811.

DENN
v.
WYNKOOP.

The release from *Banta* and wife to *Ludlow* was executed on the same day with the covenant. It recites the mortgage; and in the covenant against encumbrances, this mortgage is expressly excepted, showing, most clearly, that *Ludlow* meant to take the land for the debt; and that the mortgage money was not paid.

If the partition deed operated as a conveyance in fee to *W. Banta* and wife, they held as joint-tenants; and *Wiert Banta* having survived, the whole estate was in him. We may suppose that the wife intended that the estate should be conveyed to her husband; and the partition deed was so drawn in order to fulfil that intention.

*Per Curiam.* The defendant sets up a title under the mortgage, executed by *Banta* and his wife to *Gabriel Ludlow*, and if that mortgage interest has not been redeemed, it forms a good defence to the action. The endorsement upon the mortgage by *Daniel Ludlow*, who claimed the interest under it, was no satisfaction and discharge of the mortgage, either at law or in equity. It is very clear that it was not so intended. The land was taken for the debt, and *Ludlow* retained the mortgage, to secure his title, as the release of *Banta* alone did not secure the fee. This is the express language of the endorsement, and it would be unjust to take the land from him, or his assigns, without payment of the debt for the security of which the mortgage was created. Whether the mortgage be redeemable, or not, at this late day, is a question that belongs to the court of chancery, and not to this court to decide. The defendant is entitled to judgment.

Judgment for the defendant.