## FREEMAN *vs.* PAUL.

Where the legal and equitable estates become united in the mortgagee, the mortgage will be considered as subsisting, or not, according to his intention, actual or presumed. If no such intention appears, the Court will consider what is most for his interest. And if it appears wholly indifferent, the charge or incumbrance will be treated as merged.

After a bill in equity is brought to redeem mortgaged premises, the Court will not permit the officer, who execute the writ of *habere facias* under which the mortgagee entered, to amend his return, by stating an earlier day of service, for the purpose of foreclosure.

IN this case, which was a bill in equity to redeem an estate mortgaged, the principal facts were as follows.

The premises were originally mortgaged on the 18th day of *May* 1814, by *Peter* and *Theodore Littlefield,* who were tenants in common, to *Samuel Lunt* and *Jeremiah Paul,* to secure a joint debt of both the mortgagors, for the sum of four hundred dollars, due in six months with interest.

Afterwards, *July* 16, 1816, their right in equity of redemption was sold to *Edward A. Emerson,* at a sheriff's sale, in due course of law, by Mr. *Paul,* the defendant, who was a deputy sheriff, to satisfy two writs of execution in his hands against them in favor of another creditor.

At *October* term 1816, of the Supreme Judicial Court, *Lunt* and *Paul* recovered judgment upon their mortgage, *for possession* of the premises.

*February* 22, 1817, *Lunt* conveyed all his interest in the premises to *Edward A. Emerson.*

In *July* following, Mr. *Emerson* conveyed to the plaintiff *one half* of all the right in equity which belonged to the mortgagors, and which he had before purchased of Mr. *Paul,* at the sheriff's sale, the condition in the deed not having been performed.

A *pluries habere facias* having been duly issued on the judgment obtained by the mortgagees for possession of the premises, it was delivered *July* 13, 1818, to a coroner for service, by the present plaintiff, who was the attorney of the mortgagees in that suit. The coroner testified that on *that day* he gave possession of the land to *Emerson* and *Paul,* in presence of the mortgagor and his family ; and that afterwards having collected the bill of costs, he paid over the money to the present plaintiff, *October* 24, 1818 ; who, on the same day wrote the coroner's return, bearing that date, and running in the usual form,—" By virtue of this precept *I have delivered* seisin and possession," &c. which was then signed by the coroner. It did not appear that the plaintiff had any actual knowledge of the precise *time* when possession was delivered by the officer to the mortgagees ; but only that he knew that it had been done, and that he wrote the return at the officer's request.

*May* 22, 1819, *Emerson* conveyed to *Paul,* the defendant, in fee, all his right, title and interest in the land ; thus uniting in

*Paul* the titles of mortgagor and mortgagee of half the premises. This conveyance the plaintiff treated as payment of one half of the debt, and accordingly, on the 5th day of *October* 1821, being less than three years after the date of the coroner's return, tendered to the defendant two hundred and ninety dollars for the amount due to him, which being refused, the present bill was filed.

*Shepley*, for the plaintiff, contended that by the union in the defendant of both titles to one undivided moiety of the land, one half of the debt was *ipso facto* extinguished ; and the plaintiff was thereupon entitled to redeem, upon payment of the residue. To this point he cited 2 *Com. Dig.* 676. *Chancery* 4 *N.* 8, 9. 6 *Com. Dig.* 323. *Suspension B. ib.* 190. *Release B.* 6. *Co. Lit.* 280 *a.* 148 *a. Litt. sec.* 222, 543, 544. *Thomas v. Thompson* 2 *Johns.* 471. *Ld. Compton v. Oxenden* 2 *Ves. jr.* 264. *Selby v. Alston* 3 *Ves. jr.* 339. *Berry v. Usher* 11 *Ves.* 90. 13 *Ves.* 62. *St. Paul v. Ld. Dudley & Ward* 15 *Ves.* 173. *Forbes v. Moffatt* 18 *Ves.* 384. *Porter v. Millett* 9 *Mass.* 101. *Collins v. Torrey* 7 *Johns.* 278. *Ritchie v. Williams* 11 *Mass.* 50. *Stevens v. Gaylord ib.* 266. *Winship v. Bass* 12 *Mass.* 199.

The officer's return, he insisted, was conclusive evidence of the time when possession was delivered ; and was not to be controled by parol testimony; nor could the officer now be permitted to amend it, as such amendment would impair the rights already vested in a third person. Neither could the parol evidence of what was done on the 13th day of *July* avail the defendant as an entry *en pais* for condition broken, because the evidence shewed that it was nòt so intended. To the conclusiveness of the return, he cited *Purinton v. Loring* 7 *Mass.* 391. 6 *Com. Dig.* 242. *Retorn G. Williams v. Brackett* 8 *Mass.* 240. *Davis v. Maynard* 9 *Mass.* 247. *Bott v. Burnell* 11 *Mass.* 165.

*Greenleaf*, for the defendant, having at the opening of the case moved the Court to permit the officer to amend his return, by stating the *true time* when he delivered possession to the mortgagees, now argued that the amendment was in perfect consonance with established principles, as it did not go to contradict

Freeman v. Paul.

the return, but only to explain it. The return states that he *had* delivered possession, but not *on what day* this was done ; and to ascertain this day is the object sought. Nor would it affect the rights of strangers, the plaintiff claiming at that time to be a privy in estate, by his purchase in the preceding year. *Thatcher & al. v. Miller* 11 *Mass.* 413. If, however, this motion is not granted, the evidence shews an entry *en pais July* 13, 1818, in presence of the mortgagor, and with his assent ; and by the lapse of three years from that time the mortgage is foreclosed.

The union of titles in the defendant, he contended, was not 'to be construed to his injury ; but the mortgage was to be kept on foot as it originally stood, so long as it was plainly his intention, or his interest, that it should be so treated. Otherwise, the mortgagee to whom a mortgagor has executed a release of the land, must lose his remedy on the covenants in his mortgage deed ; and hold the land subject to all mesne attachments and incumbrances. But here the intent of the mortgagees evidently was to claim the benefit of the mortgage. *Forbes v. Moffatt* 18 *Ves.* 384. *Denn v. Wynkoop* 8 *Johns.* 168. *Norton v. Soule* 2 *Greenl.* 341.

But *the plaintiff in this case* is not, on any principle, entitled to redeem ; because nothing passed to him by his deed, it being a conveyance of *part* of a right in equity, which was indivisible.

The cause being continued *nisi*, the opinion of the Court was delivered at the ensuing *August* term in *Oxford* by

MELLEN C. J. If the coroner's return speaks the truth as to the time when seisin and possession was delivered to the mortgagees, then the tender was made in due season ; being within three years next following the date of the return. For the purpose of being relieved from the effect of the return, as it now stands, the counsel for the defendant has moved for leave to the officer who made it to amend it, by inserting *July* 13, 1818, as the day when seisin and possession were in fact delivered ; and he has introduced proof with a view of establishing the truth of his assertion. This motion is opposed by the plaintiff, as not being grantable on principle. It is not necessary to notice the

authorities introduced by his counsel to shew the conclusiveness of the return. On the other side this seems admitted ; and hence is perceived the importance of the motion to amend it, inasmuch as it cannot be contradicted in its present form. In support of the motion, the defendant's counsel has cited the case of *Thatcher v. Miller* 11 *Mass.* 413. The report of the case there shews nothing decisive. The same case was again considered and is reported in 13 *Mass.* 270. By this last report it appears that the motion was denied ; the Court considering that it would be dangerous to grant it. But if we were clear that on principle it would be proper to grant the leave requested ; another question remains, and that is, whether, in the circumstances of this case, justice requires that the amendment should be made. As a general principle, it is certainly true that when a mortgagee takes possession under his *habere facias*, the owner of the equity of redemption has a right to consider the officer's return thereon as speaking the truth, and to make his calculations accordingly, with respect to redeeming. It may be, and often is the only evidence which he has as to the time of taking possession. He will in such cases rely on the record, presuming it cannot deceive him. It is said, however, that the general principle is not applicable in this case, because *Freeman* had personal knowledge that the *habere facias* was executed *July* 13, 1818. It is difficult to arrive at this conclusion from the depositions in the case. All the deponents, except *Howard* the officer, say expressly they do not know that *Freeman* had any knowledge of the service of the writ of possession ; and *Howard* himself, who doubtless has strong wishes on this subject, only says that *Freeman* had knowledge of the service of the writ, and was present at the time, which he says he has no doubt was on the 13th of *July* ; but he adds, that he is positive that *Freeman* wrote the return himself ; and yet this very return bears date *Oct.* 24, 1818. He says further, that *Freeman* wrote the return at his request. It must therefore be considered as written and dated according to *Howard's* direction ; and thus contains a declaration on his part that the return was completed, and was to take effect on that day and not before ; and of course *Freeman* was justified in so considering it ;

Freeman *v.* Paul.

and from that day commenced his calculation of the three years within which he must redeem the premises. On these principles, it would seem to be direct injustice to allow the amendment, as its operation would be retrospective, and destructive of the plaintiff's claims. But, if we only place the present motion on the common ground of motions out of time, to plead infancy, or the statute of limitations, or the statute against usury, motions which are seldom granted, there would seem to be good reasons for denying the leave requested. This is a process in equity; and by refusing the motion and eventually sustaining the bill, we do no injustice to the defendant;—his debt and interest must be paid, and perfect justice be done him, before he will be compelled to surrender up the possession of the premises. But by granting the leave, the tender must be decided to have been too late, and the equity of redemption lost. As the motion is addressed to our discretion, we are at liberty to grant or refuse the amendment, according as the justice of the case may seem to demand. On the whole, considering all the circumstances abovementioned, our opinion is that the motion ought not to prevail; and we deny it accordingly.

The counsel for the defendant has contended that as the return now stands it does not follow necessarily that possession was not delivered on the 13th of *July* 1818; because the officer in his return dated *Oct.* 24, 1818, only says, " by virtue of this precept I have delivered," &c.—not saying *when.* We cannot admit this construction. The act must be considered as done on the day stated at the head of his return. It has also been urged that, laying the return out of the case, there was an *entry en pais* on the 13th of *July* ; and that such an entry was sufficient. On looking carefully into the proof, it does not establish any such fact ; it is mere opinion or hearsay. Besides, the answer of the defendant alleges nothing of this kind ; it relies merely on the seisin and possession delivered by *Howard*, by virtue of a writ of *habere facias.* These circumstances, therefore, can have no effect in the decision of the cause.

The only question remaining to be considered is, whether a sufficient sum was tendered by the plaintiff to entitle him to

maintain this bill ; and under this head three points have been presented.

1. Was the equity of redemption capable of division so that the plaintiff could legally purchase a moiety of it ?

2. If so, could he redeem the premises by paying or tendering a moiety only of the original debt and interest ?

3. If so, has he tendered a moiety of such debt and interest ?

In considering these points, we shall change their order. As to the third, we would observe that a question arose at the hearing, whether the sum tendered was a moiety of the original debt and interest due at the time of the tender ; to answer which question, it became necessary that an account of rents, profits, and expenses, since the entry of the mortgagees, should be taken. This has been done, and it is now ascertained that the sum tendered, added to the balance of rents and profits received by *Paul*, since possession under the judgment was taken, was sufficient ; being more than a moiety of the original debt and interest. This disposes of the third point.

As to the first point, it is of importance to attend to dates. It appears by the deeds in the case that on *Feb.* 22, 1817, *Emerson* was the owner of all the equity of redemption, and of a moiety of the premises as mortgagee ; or rather as assignee of one of the mortgagees. Now, if this union of titles in *Emerson*, as to a moiety, operated as an extinguishment of the mortgage in respect to such moiety and a merger of the equity in the legal title, as is contended by the counsel, and will be examined by us under the second point, then it follows that when *Emerson*, on the 26th of *July* 1817, conveyed to *Freeman* what he called one half of the equity of redemption, he in fact conveyed all the right that he had and that was then in existence. On this principle, the objection disappears, and leaves only one question or point more ; being the second point before mentioned, viz.—could the plaintiff redeem the premises and be entitled to a decree of restoration by tendering only a moiety of the debt and interest ? This resolves itself into the question, whether the union of titles in *Emerson*, of which we have before spoken, did, as to a moiety, extinguish the mortgage, and of course, leave only one half the original debt and interest in legal existence. If so, the bill must be sustained

Freeman *v.* Paul.

and a decree passed in favor of the plaintiff,—if not, it must be dismissed.

On this head we have examined the places referred to by the counsel for the plaintiff in *Littleton* and *Coke*, and the cases in the *New-York* and *Massachusetts* reports. The former relate to extinguishment of rent as to all, or to a part, in certain cases ; the latter refer to cases of extinguishment or suspension of debts by the appointment of the debtor as executor or administrator. The cases from 2 *Ves.* 264, 3 *Ves.* 339, and 15 *Ves.* 173, seem to establish or recognize the general principle that the union of the legal and equitable estates produce a merger of the equitable, unless the contrary appears to have been the intention on the part of him in whom the two interests are united. In the case from 8 *Johns.* 168, cited by the defendant's counsel, there was express proof, that the mortgage was kept on foot by way of security. But he principally relies on the case of *Forbes v. Moffatt* 18 *Ves.* 385, as containing and establishing principles that will settle this cause in his favor. This case was also cited by the counsel for the plaintiff. The facts were, *John Moffatt* held a mortgage of certain estates to secure the payment of 13,000*l.* Afterwards the mortgagor died ; having by his will devised all his property real and personal to the said *John Moffatt* the mortgagee ; and the question was, whether the mortgage was extinguished or sunk in the devise. Sir *William Grant*, the master of the rolls, in delivering his opinion, lays down certain principles, regulating in all questions of such a nature. He observes—" It is very " clear that a person becoming entitled to an estate subject to a " charge for his own benefit, may, if he chooses, at once take the " estate, and keep up the charge. The question is upon the " intention, actual or presumed, of the person in whom the " interests are united. In most instances it is, with reference " to the party himself, of no sort of use to have a charge on his " own estate ; and where that is the case, it will be held to sink, " unless something shall have been done by him to keep it on foot. " The owner of a charge is not, as a condition of keeping it up, " called upon to repudiate the estate. The election he has to " make is not, whether he will take the estate or the charge ; " but whether, taking the estate, he means the charge to sink

" in it, or to continue distinct from it." Where no intention is expressed by words or actions, on the part of the mortgagee, as to the manner in which he holds the estate after acquiring the whole title, recourse is to be had to presumptive intention. On this point the master of the rolls proceeds and says,—" With " regard to presumptive intention, it was evidently most advan- " tageous for *John Moffatt* that this mortgage should be kept on " foot ; for otherwise, he would have given priority to the other " mortgage and all the debts of his brother, (the mortgagor.) " The reasonable presumption, therefore, is that he would choose " to keep the mortgage on foot. When no intention is expressed, " or the party is incapable of expressing any, I apprehend the " Court considers what is most advantageous to him. Upon that " principle it was holden in the case of *Thomas v. Kemish*, that " the charge should not sink ; as that was for the advantage of " the infant." He further observes,—" Upon looking into all the " cases in which charges have been held to merge, I find nothing " which shows that it was not perfectly indifferent to the party, " in whom the interests had united, whether the charge should or " should not subsist ; and in that case, I have already said it sinks."
In the above case of *Forbes v. Moffatt* it was contended that as the whole estate was devised to *John Moffatt*, the mortgagee, the whole charge or mortgage was sunk. In the case before us as *Paul* purchased the equity of redemption as to a moiety only, it is not contended that more than a moiety of the mortgage is extinguished or charge sunk. Let us now apply the principles we have been considering, to the facts in the case before us, and see if there are any circumstances shewing an express intention on the part of *Paul* as to the continuance or merger of the moiety of of the mortgage. We have none of his language or declarations on the subject ; and the only acts on his part, in relation to the mortgage, are the recovery of judgment thereon in the year 1816, by him and *Lunt*, and receipt of seisin and possession in *October* 1818,—and both these events took place before *Paul* had acquired any interest whatever in the equity of redemption. This interest he purchased in *May* 1819. Of course neither of those acts can explain the intentions of *Paul*, in a transaction

which did not occur till many months afterwards. As to *Paul's* refusal of the money tendered, accompanied by his reasons for the refusal, it certainly does not furnish any evidence of intention as to the point under consideration. He claimed the property as his own absolutely ; and denied all right on the part of *Freeman*. Such conduct is perfectly consistent with any good title in him, from whatever source derived. There being then, no proof of intention by words or acts on the part of *Paul*, the next inquiry is whether the case furnishes any grounds of presumptive intention. The answer is simple and plain. No facts are disclosed, shewing that the continuance of the mortgage or charge, as to the moiety owned by *Paul*, has been, since he became the owner of it, or ever can be, of any advantage to him. We hear of no intermediate incumbrances whatever, and have no grounds presented to our view on which we can perceive any possible advantage in holding the moiety under the mortgage, when he owned the whole title and estate therein. In the language of Sir *William Grant*, we find nothing which shows that it was not, and is not, perfectly indifferent to *Paul* whether the charge should or should not subsist ; and in that case it sinks.

The result is that there must be a decree for the plaintiff.