COLYER S. WENTWORTH et al. vs. JEROME F. TUBBS et al.

Argued May 23, 1893. Decided June 1, 1893.

**Liens Date from the Commencement of the Improvement on the Land.**

As respects the date of acquiring a lien, the term "furnish," as used in the mechanic's lien law, means furnished on the premises; and the liens of all mechanics and material men attach as of the date of the performance of the first work, or the delivery of the first material on the ground; that is, from the commencement of the improvement on the land.

**Subrogation, when Refused.**

> Upon the facts found, a mortgagee was not entitled to be subrogated to the rights of the holders of certain lienable claims against the mortgaged premises, which he paid with the proceeds of the mortgage.

Appeal by Charles S. Sedgwick, one of the defendants, from a judgment of the District Court of Hennepin County, *Thomas Canty,* J., entered April 30, 1892.

On February 1, 1890, the defendant Jerome F. Tubbs employed the defendant Charles S. Sedgwick, an architect, to make plans and specifications for a building which he proposed to construct on lot twelve (12) on block ten (10) in Penniman's Addition to Minneapolis. For several months from that time the architect was engaged at his office in that work. On March 13, 1890, Tubbs mortgaged the property to Mary A. Topliff for $13,000. This mortgage was recorded March 26, 1890. Nothing was done on the lot prior to March 27, 1890, to indicate or suggest that a building was to be erected on it. Soon after that day, work was commenced and prosecuted for a year thereafter. Above thirty persons did work and furnished materials, and they and Sedgwick all filed liens. On August 5, 1890, Mary A. Topliff loaned to Tubbs the further sum of $10,000 to pay for work and materials, and took a second mortgage on the property. This second mortgage was recorded August 11, 1890. These mortgages bore interest at the rate of ten per cent. a year.

At the time of making this second mortgage, and as a part of the transaction, it was agreed between the parties that the money should be paid upon the liens on the building. Of this sum $9,581.67 was in fact so paid on liens. A partial payment was made to each lienholder. The lienors so receiving payments each agreed, in consideration of such part payment, that both Topliff mortgages should be prior and paramount to the balance of his lien. A large number, but not all, accepted partial payment and so agreed. Mrs. Topliff foreclosed her second mortgage under the power of sale therein, and on August 10, 1891, bid in the property for $11,140.59.

The plaintiffs, Coyler S. Wentworth and William G. Graham, partners, contracted with Tubbs on August 20, 1890, to furnish and set in the building, steam heating apparatus, valued at $1,-

560.90. They did the work, filed a lien, took no partial payment and made no release to Mrs. Topliff. On July 9, 1891, they commenced this action to foreclose their lien. The owner Tubbs, the mortgagee Topliff, the architect Sedgwick and all the lien claimants were made defendants. Sedgwick's lien was for $600, on which $150 had been paid by Tubbs. He and eight other lien claimants, defendants, having liens amounting to $1,586.19 took no partial payment from, and made no agreement with, Mrs. Topliff. The trial court held that plaintiff's lien for $1,560.90, Sedgwick's lien for $450, these eight other liens for $1,586.19, and Mrs. Topliff's second mortgage to the amount of $9,581.67 were co-ordinate and subject to the first mortgage, but paramount to all the other liens whose holders had so agreed with Mrs. Topliff. The property was adjudged to be sold subject to Mrs. Topliff's first mortgage, and the proceeds applied ratably on these paramount claims, and the excess, if any, upon the other liens. Defendant Sedgwick alone appealed. He appealed October 30, 1892, from so much of the judgment as decreed his lien subject to the first mortgage and that $9,581.67 of the second mortgage was co-ordinate with his lien.

On the argument in this court, subsequent facts were conceded by the parties, viz. that on August 30, 1892, the premises were sold under the judgment appealed from, to defendant Wheaton for $150; the sale was reported and duly confirmed. Meantime Mary A. Topliff had on September 7, 1891, foreclosed her first mortgage under the power therein, and bid in the property for the sum due on it. · Wheaton filed notice and redeemed September 12, 1892, paying her $16,795.67. No other lien claimant redeemed. Subsequently certain judgment creditors of Tubbs who had filed notices, redeemed from Wheaton, and the title now stands on the foreclosure of the first mortgage and the redemptions so made.

*Roberts & Baxter*, for appellant.

The defendant Sedgwick objects to the conclusion of law that his claim is inferior to the first mortgage. This contention is necessarily confined to the facts as shown in the findings, but the fact that an excavation had been begun upon the property prior to the making of the first loan by defendant Topliff, is sufficient to entitle Sedgwick to a judgment that his lien is superior to that of the

mortgage. The lien dates from the time of the furnishing of the first item of the labor, skill or material. There is nothing in the statute that the lien dates, so far as relates to subsequent incumbrances, only from the commencement of the building. *Tibbetts* v. *Moore*, 23 Cal. 208; *Fleming* v. *Bumgarner*, 29 Ind. 424; *Bell* v. *Cooper*, 26 Miss. 650; *Montandon* v. *Deas*, 14 Ala. 33; *Gale* v. *Blaikie*, 126 Mass. 274; *Thielman* v. *Carr*, 75 Ill. 385.

Great injustice has been done this defendant by making his lien co-ordinate with the lien of the second mortgage. In this case the mortgagee did not intend to put herself in a position to claim a lien in any other way than by virtue of her mortgage. So far from making an effort to acquire the mechanic's liens she undertook to take such steps that the mechanic's liens would be subsequent and inferior to her mortgage; and she was successful in that attempt with a large majority of the lien claimants. So far from manifesting any purpose to enforce her claim upon said premises by the aid of the statute for mechanic's liens, she proceeded to foreclose her mortgage, and to bid in the premises for her claim. There is now no doubt about her intention; she not only took a mortgage for security for her debt, but she takes this mortgage security in satisfaction for her debt; her answer shows that she has no claim against anyone for her money; the indebtedness of Tubbs is paid by the foreclosure sale, and defendant Topliff has a mortgage lien upon the premises which has now matured into a title. She cannot in equity be subrogated to the right of a lien claimant, because the money she advanced went to pay claims that might have been enforced as mechanic's liens.

*Daniel Fish*, for respondent.

The question as to priority of Sedgwick's lien over the first mortgage is the only one of practical importance, for unless his claim is superior to that mortgage, it is extinguished by the foreclosure. The effect of the findings and the evident intention of the trial court was, to declare that the first mortgage was taken upon a vacant lot, in entire ignorance on the part of the mortgagee, that any building was contemplated. Upon that state of facts, Sedgwick contends that because at his office, he had commenced to draw

plans for a building of which the mortgagee had neither actual nor constructive notice, he is entitled to priority over the mortgage for his compensation.

Many of the cases cited arose under statutes which affix the lien as of the date when the contract was made. Such is the law of Mississippi, Massachusetts, Alabama, and Illinois. Our statute affixes the lien, as between lien claimant and mortgagees, at the date when the building is actually begun on the land. *Gardner* v. *Leck*, 52 Minn. 522. In at least twenty states, a similar law has been enacted. In those states the courts have held that such facts as are here disclosed are not sufficient to cut out a mortgage. All agree that the work done must be such as to indicate that a building is in progress. *Brooks* v. *Lester*, 36 Md. 65; 2 Jones, Liens, § 1469; *Chapman* v. *Wadleigh*, 33 Wis. 267; *Taylor* v. *La Bar*, 25 N. J. Eq. 222; *Kelly* v. *Rosenstock*, 45 Md. 389.

Appellant's second grievance is, that so much of the face of the second mortgage as was actually used to reduce the total of the liens, was admitted to share with him in the proceeds of the sale under the lien judgment. It appears that Tubbs had expended all his means, leaving the buildings unfinished, with a large indebtedness, all of which was lienable. At this juncture he applied to Mrs. Topliff for an additional loan of $10,000, which was granted on condition that all existing liens should be cleared away. $9,-851.67 was used in paying off these lien claims in part, and in procuring releases thereof as against both of the Topliff mortgages. Every person then having or claiming a lien, except Sedgwick, signed an agreement consenting to be postponed to said mortgages. The result was that the liens then existing were not only reduced by said sum of $9,851.67 derived from the second mortgage, but the balance of these liens, then aggregating $11,242.16, was postponed.

What the trial court did in this case was simply to subrogate Mrs. Topliff to the rights of the lien claimants to the extent of the money actually paid to them by her. Sedgwick was in no way harmed by this, for her payments had not only reduced the existing liens by the amounts so paid, but had given him priority with her over the balance. There is no difficulty in applying the

doctrine of subrogation to such a state of facts. *Emmert* v. *Thompson*, 49 Minn. 386.

MITCHELL, J. This action, which was to foreclose a mechanic's lien, is brought here on the findings of the court, without any case or bill of exceptions, and hence the only question is whether the conclusions of law are justified by the findings of fact. Tubbs is the owner of the premises, who contracted for the construction of the building. Topliff is a mortgagee of the premises, and the other defendants and the plaintiff claim liens for labor and material performed or furnished for the construction of the building. As Sedgwick is the only appellant, and as his assignments of error relate only to the decision of the court in favor of Topliff, we have only to consider the relative rights of these two parties.

Sedgwick claims a lien for labor and skill performed and furnished, at the request of Tubbs, in preparing plans for the building, and in superintending its construction. The court finds "that he commenced to draw the plans on the 1st of February, 1890, but that this work was then commenced in his office, and not upon the ground; that there was nothing upon the premises up to May 26, 1890, to indicate that any architect had been employed for any purpose in connection with the premises, or for the purpose of erecting any building or structure thereon; and that up to said time said architect performed no labor, services, or skill upon said premises." The court also finds that "after said 26th of May, 1890, said Tubbs commenced the erection of a building on said lot." We construe this as meaning that no work had been commenced and no labor performed or materials furnished on the premises by any one until after May 26th.

There is a finding that Tubbs caused an excavation to be made on the lot about March 1, 1890, but there is none as to its extent and character, or that it had any relation to the erection of this building; hence we deem the finding wholly immaterial.

Topliff's claim is based on two mortgages on the premises, executed by Tubbs,—one for $13,000, executed March 13, 1890, and recorded on the 26th of the same month; and the other for $10,000, executed August 5, 1890, while the building was in process of erection, and recorded the 11th of the same month.

1. Appellant's first assignment of error is that the court erred in holding that his lien was inferior and subordinate to the lien of this first mortgage. This presents the question when appellant's lien attached, his contention being that it was acquired February 1, 1890, when he commenced drawing the plans for the building in his office. This involves the construction of the statute. The mechanic's lien law nowhere in express terms declares when a lien attaches. Laws 1889, ch. 200, § 8, requires that the statement filed shall contain the time when the first and last items of labor or material were furnished, and provides that the statement, when filed, "shall operate to continue such lien during all the period of time *from the time of the furnishing of the first item of such labor*, etc., until the expiration of one year after the time of furnishing the last item of the same."

It is on this provision that appellant relies for support for his contention. The tenth section of the act, in effect, provides that all liens for labor, material, etc., furnished for the construction of a building, without regard to the relative dates at which it was furnished, shall be co-ordinate, and without priority one over the other.

The time when a lien is to be considered as acquired depends upon the statute authorizing the remedy. The statutes are not uniform on the subject.

The larger number fix the commencement of the work on the premises—the first labor done or materials furnished on the ground·—as the date when the mechanic's or material man's lien attaches.

This is exceedingly fair and liberal to the mechanic, especially under our statute making all liens co-ordinate; so that all who furnish material or labor at any time during the process of construction of the building get a preference over all other liens of a date posterior to "the commencement of improvement on the land" by the one who performs the first labor or furnishes the first material on the ground. *Gardner* v. *Leck*, 52 Minn. 522, (54 N. W. Rep. 746.) This works no injustice to any one dealing with the property, as the work itself is notice to all of the mechanics' claims. It enables them by ocular examination to ascertain whether they can do so safely.

But, on the other hand, it would be very unjust if the land could be afterwards swallowed up by mechanics' liens for work which had not been commenced on the ground, and of which consequently one who might buy the property or take a mortgage upon it had no notice or means of knowledge when he took his deed or his mortgage.

The injustice of this would be forcibly illustrated by the facts of this case, where appellant claims a lien as of the date of February 1st, when he perhaps began the mental labor or skill of designing the plans of the proposed building, which furnished no visible trace of work or labor on the ground itself. If the date of the lien could thus antedate the actual commencement of operations on the premises three months, there is no reason why it might not antedate it three years.

The injustice of this would be intensified under our statute, in view of the fact that the date of the lien of the person who furnished the first material or labor would fix the date of all other mechanics' liens, regardless of the dates at which such material or labor was in fact furnished. Hence we ought not to give to the statute the construction contended for by appellant, unless it will not reasonably admit of any other; and in determining the meaning of the phrase "time of furnishing," as used in the eighth section, reference should be had to all the other provisions of the act, as well as its general scope and plan. Of course, as against the owner who contracts for the erection of the building, the question when a mechanic's lien attaches is of no practical importance. It only becomes material with reference to subsequent purchasers and mortgagees. Taking into consideration all the different provisions of the statute, as well as our previous decisions construing it, we are of the opinion that, as regards the date of acquiring a lien, the word "furnished" or "furnishing," as used in the law, means furnished on the premises, and that the liens of mechanics or material men all attach as of the date of the performance of the first work or the delivery of the first material on the ground.

This was the view taken in *Glass* v. *Freeburg,* 50 Minn. 386, (52 N. W. Rep. 900,) and *Gardner* v. *Leck, supra,* and it was upon this theory of the law that in the latter case it was held that all liens for labor or material furnished by any one, at any time during the

progress of the work, attach as of the date of the commencement of improvement on the land.

Our decisions to the effect that a party might, under certain circumstances, have a lien for material which was never actually delivered on the premises, or not actually used in the building, are not inconsistent with this view. In all these cases it will be found that not only was no question of *bona fide* purchaser or mortgagee involved, but in every instance there was in fact a building in process of construction, and the material was either in fact delivered on the premises, but subsequently diverted by the contractor, or its delivery was prevented by the fault of the owner. See *Howes* v. *Reliance Wire-Works Co.*, 46 Minn. 44–48, (48 N. W. Rep. 448;) *Hickey* v. *Collom*, 47 Minn. 565, (50 N. W. Rep. 918;) *Burns* v. *Sewell*, 48 Minn. 425, (51 N. W. Rep. 224.)

2. Topliff's second mortgage was given to secure a loan of $10,000. The court finds that, at the time this mortgage was made, it was agreed between the parties thereto that the money thus borrowed should be paid by the mortgagee to persons holding liens on the premises for labor and material furnished in the erection of this building, and releases of such claims procured from the holders; that, pursuant to this arrangement, the mortgagee paid over the proceeds of the mortgage on claims due for labor and material so furnished by persons holding liens therefor; that the amount so paid operated to extinguish liens on the premises to that amount, which were co-ordinate and of equal priority with the other liens for labor and material, including that of appellant, enumerated in what, in the findings, is called the "Second Division." When the court speaks of these claims, to the payment of which the proceeds of this mortgage was applied, as being liens on the premises, we understand that he means what, for want of a better term, we may call "inchoate liens;" for it is not found that either the holders or any one else had ever filed statements of liens as required by the statutes.

Inasmuch as the proceeds of this second Topliff mortgage were thus used to pay off claims which were lienable against the property, and thereby reduced by that amount the liens which would have been co-ordinate with the lien of appellant and the other liens

of the "second division," the court held, on what he considered the doctrine of equitable subrogation, that the lien of the mortgage was co-ordinate with the liens of the "second division," and directed the distribution of the proceeds of the sale of the premises on that basis.

This is the subject of appellant's second and third assignment of error.

As this goes only to the distribution of the proceeds of the sale, and will not affect the sale itself, and inasmuch as it was admitted on the argument that the sale had already taken place at which the premises (which were sold subject to Topliff's first mortgage) only brought the gross sum of $150, this question is of no real practical importance, as appellant's share would only be a very few dollars.    But we are unable to see how, upon the facts, the doctrine of subrogation can apply.    This doctrine, we are aware, is a favorite one with the courts, but its application is regulated by certain well-defined rules.

It can only apply where the payment operates as a purchase or equitable assignment, and not an extinguishment of a claim.    It only applies in favor of one who has bought the debt either expressly or by paying it under circumstances which render the payment equivalent to a purchase.    Whether the payment amounts to a purchase or an extinguishment is really a question of intention, either express or presumed from the relation of the party to the debt or other circumstances under which the payment was made.    There is no finding that the parties intended the payment of these claims as a purchase, or intended that they should be kept alive for the benefit of Topliff.    On the contrary, the court finds that the agreement was that she should pay the claims, and obtain *releases* therefor, and that the payment operated to *extinguish* them.

Nor are any facts found from which an intention to keep the claims alive can be presumed.    The payment was not made by one collaterally liable for the debts, when the law, by reason of the right of the party, would presume that the payment was intended as a purchase, and not as an extinguishment.    Neither is it found that, as in *Emmert* v. *Thompson*, 49 Minn. 386, (52 N. W. Rep. 31,) the payment was made under any mistake of fact as to the state of the title of the premises.    So far as appears, Topliff obtained just

the security under her mortgage which she expected to get, with these claims extinguished. In short, the facts found do not bring the case within any recognized ground for equitable subrogation. The mere fact that, if subrogation is not allowed, the other lienors may be in better position, or, if allowed, may be in no worse position than if these claims had not been paid, is not, of itself, ground for subrogation. Judgment modified in so far as it makes the second Topliff mortgage co-ordinate with plaintiff's lien; but the amount is so trifling that appellant is not entitled to statutory costs.

VANDERBURGH, J., absent, took no part.

(Opinion published 55 N. W. Rep. 543.)