MAGDALENE R. LOSLEBEN v. JOHN E. LOSLEBEN AND OTHERS.
STATE BANK OF NEW PRAGUE v. NICHOLAS LOSLEBEN AND ANOTHER.[1]

February 13, 1937.

Nos. 31,182, 31,184.

*Thomas H. Quinn,* for appellant.
*A. B. Childress* and *Einar Hoidale,* for respondent.

[1]Reported in 271 N. W. 463.

228

Holt, Justice.

The two actions were tried as one, but separate findings were made. Magdalene R. Losleben, plaintiff in one of the actions and one of the defendants in the other, moved for amended findings in each case and appeals from the judgments.

Of these facts there is no dispute: John E. Losleben and his wife, on July 1, 1932, mortgaged their home in the city of Faribault to the Citizens National Bank of Faribault to secure the sum of $2,800. The mortgage was duly recorded on August 18, 1932, and thereafter, on October 24, 1932, assigned by the mortgagee to Magdalene R. Losleben, which assignment was duly recorded on June 6, 1935. No part of the principal of the mortgage debt has been paid, but interest was paid to January 1, 1933. On June 24, 1934, the State Bank of New Prague obtained and docketed a judgment in the district court of Rice county, Minnesota, in the sum of $1,729.80 against John E. Losleben. On December 5, 1933, John E. Losleben and his wife executed and delivered a quitclaim deed of the mortgaged premises to Magdalene R. Losleben, which deed was recorded December 18, 1934. The grantors removed from the premises, which had been their home, in the first part of January, 1934. The New Prague bank had no knowledge of the deed, and Magdalene R. Losleben had no knowledge of the judgment.

The court found that in taking the quitclaim deed the parties intended to satisfy the mortgage and concluded there was a merger of the mortgage with the title, and, hence the judgment of the State Bank of New Prague became a first lien on the land. The only question for review is whether the evidence sustains this finding:

"That the said quitclaim deed was executed and delivered for the purpose of satisfying said mortgage and with the intent on the part of said mortgagors and mortgagee to do away with any necessity for foreclosing said mortgage and in order to waive any and all rights of the mortgagors in and to said property, including the right of redemption."

The finding "that the legal effect of said quitclaim deed was to release and satisfy the within described mortgage to the above named

plaintiff, Magdalene R. Losleben; that the said mortgage was thereupon merged in, released and satisfied by said deed and said Magdalene R. Losleben became and still is the owner of said lands and premises," is really a legal conclusion drawn from the finding first quoted of intention.

When the bank and Magdalene learned of what had taken place, Magdalene started a proceeding to foreclose her mortgage by advertisement, whereupon the bank began the action to enjoin the foreclosure and have its judgment declared a first lien; thereupon Magdalene began the action to foreclose her mortgage, and the bank answered that her mortgage was satisfied and prayed for the relief asked in the injunction suit.

The finding first above quoted is challenged as contrary to the evidence. We are of the opinion that it is. Magdalene, the holder of the mortgage, testified that she retained the note and mortgage when the deed was received and that there was no understanding that the same were to be returned to the mortgagors. And in relation to her intention in taking the quitclaim deed to the property she testified: "If we could fix it up for and rent it perhaps we might be able to dispose of it in some way, just so we would get our own money out of it, and if we had anything over and above that we expected to return that to John." Following the receipt of the deed, she and her husband kept track of what they paid out and took in for the property. This question was asked: "Did you intend in taking this deed that your relationship be changed at all relative to this property?" She answered: "None at all." "Q. You never intended that you would have any more interest in it than your debt? A. No, that is all." She also testified that when the quitclaim deed was taken she did not know that John E. Losleben was indebted to the State Bank of New Prague and did not know of the subsequent judgment against him until three or four weeks after the deed was recorded. The only other witness called was the mortgagor John E. Losleben, the holder of the legal title and grantor in the quitclaim deed. After testifying that he had for some time owed his sister-in-law interest on the mortgage without being able to pay, he continued:

"I said that the only thing that I could see to do was for me to quitclaim it to them so that they could take care of the property and see whether they can get their money out of it and if they were lucky enough to get their money out of it and anything left over, why if they would return that to me, why we would all be probably a little better off, and that was the reason what finally brought on that I told them I would give them a quitclaim deed, so that they could take care of the property and see if they could dispose of it or collect enough rent, or otherwise, whereby they can get the money out of it that they had put into it."

The house needed repairs to be rentable, and John E. Losleben did not have the money to make the same. On cross-examination he was asked this question:

"As I understand you, Mr. Losleben, when you and your wife gave the deed to Magdalene Losleben, you gave it to her so that she could collect the rent or dispose of the property, if she could, to apply on the indebtedness? A. Yes, sir. Q. And that was really your only purpose? A. Yes, sir."

At the time of the trial the indebtedness on the mortgage was $3,400.95. The account of the rent collected and repairs and taxes paid out is not questioned. There was no other evidence introduced as to the transaction, and it seems to us that the only permissible inference therefrom is that there was no intention to merge or satisfy the mortgage. Furthermore, the law appears to be that there is no merger when the interest of the one in whom the two estates meet so requires, and no injustice results to anyone. The rule is thus stated in Davis v. Pierce, 10 Minn. 302 (376):

"In equity, where the legal and equitable estates become united, in the same person, the equitable is merged in the legal, unless the party in whom they meet intends to keep them separate (which intention must be just, and injurious to no one); and where no such intention is expressed, it will be presumed, if it is for the interest of the party in whom the estates meet."

Not only was the intention just that the mortgage should not merge, it could not then injure the bank or anyone else. The mort-

gaged property was the homestead of the mortgagors. No ordinary money demand placed in judgment could become a lien thereon. When the bank entered its judgment, Magdalene, by tenant, was in possession, and such possession was notice to the bank the same as would the deed be if it had then been of record. But the last clause in the rule quoted is peculiarly applicable here, *viz.:* the presumption arising from the fact that it is for the interest of Magdalene, the party in whom the estates meet, that there be no merger. The law is thus strongly stated in 41 C. J. p. 779, § 874:

"A merger will not be held to result wherever a denial of a merger is necessary to protect the interests of the mortgagee, the presumption being, in the absence of proof to the contrary, that he intended what would best accord with his interests."

Numerous cases are cited in support of the text. These are in point: Moffet v. Farwell, 222 Ill. 543, 78 N. E. 925; Smith v. Swan, 69 Iowa, 412, 29 N. W. 402; Freeman v. Paul, 3 Me. 260, 14 Am. D. 237; Oak Creek Valley Bank v. Helmer, 59 Neb. 176, 80 N. W. 891; Andrus v. Vreeland, 29 N. J. Eq. 394; Watson v. Dundee M. & T. I. Co. 12 Or. 474, 8 P. 548; Knowles v. Carpenter, 8 R. I. 548; Howard v. Clark, 71 Vt. 424, 45 A. 1042, 76 A. S. R. 782. 2 Jones, Mortgages (8 ed.) § 1104, after stating that the expression is more against merger when the legal and equitable estates unite in the mortgagee than when in the mortgagor, continues:

"There is, generally, an advantage to the mortgagee in preserving his mortgage title; and when there is, no merger takes place. It is a general rule, therefore, that the mortgagee's acquisition of the equity of redemption does not merge his legal estate as mortgagee so as to prevent his setting up his mortgage to defeat an intermediate title, such as a second mortgage or a subsequent lien, unless such appears to have been the intention of the parties and justice requires it; and such intention will not be presumed where the mortgagee's interest requires that the mortgage should remain in force."

In the instant case, where the mortgage held by Magdalene R. Losleben was a valid, good faith mortgage, wholly unpaid when the

quitclaim deed was received by her from the mortgagors, there can be no doubt that her interest requires that there be no merger as against a subsequent judgment lien. No injustice is done the State Bank of New Prague. It is not claimed that the debt upon which it entered judgment against John E. Losleben, the mortgagor, had its inception prior to the mortgage. The bank was not induced to enter judgment on the strength of knowledge of the quitclaim deed, unless from the fact that the mortgaged property was then occupied by Magdalene's tenant, but such fact would impart as effective knowledge as would the record of the quitclaim deed. In our opinion, Magdalene's mortgage is a first lien on the premises.

The judgments are reversed and the cases remanded to the court below to amend the findings in conformity with this opinion, or to grant new trials.

MR. JUSTICE STONE took no part in the consideration or decision of this case.