## KLOSTER-MADSEN, INC. v. TAFI'S, INC. AND OTHERS. PRUDENTIAL INSURANCE COMPANY OF AMERICA, APPELLANT.

226 N. W. 2d 603.

February 7, 1975—No. 44589.

*Kueppers, Kueppers & Von Feldt* and *Fred A. Kueppers, Sr.*, for appellant.

*Larkin, Hoffman, Daly & Lindgren* and *James P. Larkin*, for respondent plaintiff.

*William J. Tegeder*, for respondent P. & D. Mechancial Contracting Company.

*Kenneth P. Gleason*, for respondent Dale Tile Company.

*Katz, Taube, Lange & Frommelt*, for respondent Londer Company, Inc.

*John J. Ribnick*, for respondent Kronicks Floor Covering Service, Inc.

*Fredrikson, Bryon, Colborn, Bisbee, Hansen & Perlman*, for respondent Photosound Systems, Inc.

Heard before Rogosheske, Todd, and Yetka, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

This appeal arises out of a mechanics lien foreclosure action brought by Kloster-Madsen, Inc., a general contractor which furnished labor and material for the remodeling of a three-story building purchased by defendant Tafi's, Inc., from Minneapolis Elks Lodge No. 44. The critical issue is whether the mechanics liens asserted by plaintiff and other coordinate lienors also joined as parties have priority over the purchase money mortgage interest of defendant Prudential Insurance Company of America (Prudential).[1] The trial court, upon findings that

---

[1] The Small Business Administration, an agency of the United States, guaranteed to Prudential 75 percent of repayment of its mortgage loan. The issue of whether Federal statutes and "Federal common law" operate to alter the rules governing the issue of priority of the claimed lien interest of the United States was litigated and decided adversely to the United States by the trial court. A separate appeal by the United States was dismissed before submission of the case to this court.

the work performed by plaintiff's electrical subcontractor constituted an actual and visible beginning of an improvement on the ground within the contemplation of Minn. St. 1971, § 514.05, before the Prudential mortgage was duly recorded, concluded that the mechanics liens were entitled to priority. Prudential appeals from the order denying its post-trial motion for a new trial. Determining that the trial court correctly interpreted and applied § 514.05 to the facts found by the trial court, which have evidentiary support, we affirm.

The critical facts as found by the trial court appear to be undisputed. In July 1970, a purchase agreement was executed between Tafi's, Inc., and Minneapolis Lodge No. 44 of the Benevolent Order of Elks by which Tafi's agreed to purchase a building from Elks for $225,000. The building was a three-story structure including a main floor, which had been largely given over to a bar and restaurant, and two upper floors devoted to office and meeting rooms. The purchase was financed in part by a mortgage loan from Prudential in the amount of $232,000, of which $180,000 was to be advanced toward the purchase price and $52,000 was to be disbursed after remodeling improvements had been made.[2] The purchase transaction was closed on August 3, 1970, at which time Elks delivered a deed dated July 29, 1970, to Tafi's and Tafi's delivered a note, also dated July 29, to Prudential in the amount of $232,000. The deed and mortgage were duly recorded on August 3.

On July 20, 1970, anticipating the purchase of the property, Tafi's entered into a contract with the general contractor, Kloster-Madsen, for remodeling of the premises in accordance with prepared plans and specifications. At about the same time, Kloster-Madsen subcontracted to Wilson Electric Company the electrical work called for by the general contract and by the re-

---

[2] These funds, awaiting the decision on the priority issue, have not been disbursed.

modeling plans. On July 30, an employee of Wilson Electric went to the building and spent an 8-hour day working there. To make room for a curtain wall, he removed four light fixtures, including two chandeliers, from the ceiling. He also cut four new holes in the ceiling and placed the removed light fixtures in the new holes. He cut a "crawl hole" in the ceiling and also removed two electrical outlet receptacles from a partition in the dining room. As the trial court found, all of this work was done in compliance with the remodeling plans and specifications prepared by a design company for Tafi's. The trial court also found that "[s]aid improvements, specifically the new holes for the fixtures in their new locations and the installation of the fixtures made therein, were visible." There was testimony that the removal of the receptacles was also visible. While not covered by findings of the trial court, it is undisputed that such work was commenced without the actual knowledge or authorization of Prudential and without the authorization of Elks. There is conflicting testimony as to whether Elks had knowledge that remodeling had begun on July 30. In denying Prudential's motion for amended findings, the court rejected the latter's proposed amendment that the work done on July 30 was "without the knowledge" of Elks. Such denial is equivalent to a contrary finding. Roberge v. Cambridge Co-op. Creamery Co. 248 Minn. 184, 79 N. W. 2d 142 (1956). There is, in our opinion, ample evidence to support such contrary finding. On March 3, 1971, Tafi's was placed in receivership, prompting plaintiff's foreclosure action and giving rise to this lien priority dispute. The trial court found in favor of plaintiff and the other coordinate lienors, and Prudential appeals.

Two issues are presented: (1) Whether the work performed by the electrician on July 30 constitutes an "improvement" to the premises and "the actual and visible beginning of the improvement on the ground" within the meaning of Minn. St. 1971, § 514.05; and (2) where there is an "actual and visible beginning of the improvement on the ground," whether a purchase money mortgage interest filed subsequent to the beginning of such im-

provement is entitled to priority if neither the vendor nor the purchase money mortgagee authorized the commencement of the work constituting the improvement. Contrary to Prudential's argument, we hold that the work done constitutes both an improvement to the premises and the actual and visible beginning of the improvement, and that the mechanics liens are therefore entitled to preference over the mortgage.

The pertinent part of Minn. St. 1971, § 514.05, provides:

"All such liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof. As against a bona fide purchaser, mortgagee, or encumbrancer without notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground * * *."

Whether the work done was an improvement within the contemplation of the governing statute quoted and Minn. St. 1971, § 514.01, is a mixed question of law and fact. By dictionary definition, an improvement is "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." Webster's Third New International Dictionary (1971) p. 1138. To such definition must be added its implicit definition in § 514.01.[3] In essence, this statute makes any contri-

---

[3] Minn. St. 1971, § 514.01, provides in pertinent part: "Whoever contributes to the improvement of real estate by performing labor, or furnishing skill, material or machinery for any of the purposes hereinafter stated, whether under contract with the owner of such real estate or at the instance of any agent, trustee, contractor or subcontractor of such owner, shall have a lien upon the improvement, and upon the land on which it is situated or to which it may be removed, for the price or value of such contribution; that is to say, for the erection, alteration, repair, or removal of any building, fixture * * * thereon * * *."

bution to real property of labor, skill, material, or machinery for any purpose specified, which includes the alteration of any building, an improvement. See, Anderson v. Breezy Point Estates, 283 Minn. 490, 168 N. W. 2d 693 (1969). Since both in fact and in law the work done involved the expenditure of labor, was permanent in nature, initiated the enhancement of capital value, and was an alteration of the building, it must be held to constitute an improvement.

Whether the work done also constituted the actual and visible beginning of the improvement is, as we have long held, a question of fact, for § 514.05 in effect imposes a duty on a purchaser or encumbrancer to examine the premises for the beginning of any actual and visible improvements before a sale or mortgage transaction is completed. The test for determining visibility is not, as Prudential argues, that the improvement, although "visible to the naked eye," must also be discernible to "the mind's eyes insofar as they tell one's mind that an improvement has been commenced." Rather, the test is whether the person performing the duty of examining the premises to ascertain whether an improvement has begun is able in the exercise of reasonable diligence to see it. Reuben E. Johnson Co. v. Phelps, 279 Minn. 107, 156 N. W. 2d 247 (1968); M. E. Kraft Excavating & Grading Co. v. Barac Const. Co. 279 Minn. 278, 156 N. W. 2d 748 (1968); Lampert Yards, Inc. v. Thompson-Wetterling Const. & Realty, Inc. 302 Minn. 83, 223 N. W. 2d 418 (1974). The testimony by the person who examined the premises for Prudential after the mortgage was recorded was that he observed no improvements on August 3, 1970. However, the trial court, based upon conflicting testimony as to the appearance of the work done, upon the mortgagee's knowledge of contemplated improvements, and upon the fact that the work done was in accordance with remodeling plans, found that visible improvements had been made. Upon this record, we cannot hold that factual finding to be clearly erroneous. Rule 52.01, Rules of Civil Procedure.

Prudential principally argues that because Elks neither au-

thorized nor had actual knowledge of the commencement of remodeling, its fee interest, as held in Anderson v. Harrison, 281 Minn. 95, 160 N. W. 2d 560 (1968), is not subject to lien claims, and that therefore Prudential's purchase money mortgage interest, represented by the amount advanced toward the purchase price, should, under the equitable doctrine of instantaneous seisin, have priority over any claim arising through the mortgagor. The doctrine of instantaneous seisin, under which the title becomes encumbered with the mortgage the moment it passes from seller to purchaser, is designed to protect mortgagees from hidden or undiscoverable liens. The facts before us indicate that the mechanics liens here cannot be so characterized and provide no adequate basis for applying equitable principles. The record refutes any finding that Elks was without notice or knowledge of the commencement of the work. Apart from this factual deficiency, under § 514.05 Prudential is chargeable with constructive notice of the attachment of a lien when the actual beginning of visible improvements occurs prior to the mortgage transaction. We also observe that Prudential anticipated that improvements were to be made, since part of the mortgage proceeds was to be used for remodeling expenses. Moreover, § 514.05, by its express terms, makes no distinction between types of mortgages and protects only a bona fide mortgagee without notice, actual or constructive, from the priority of lien claims. See, New Prague Lbr. & Readi-Mix Co. v. Bastyr, 263 Minn. 249, 117 N. W. 2d 7 (1962) ; Brettschneider v. Wellman, 230 Minn. 225, 41 N. W. 2d 255 (1950).

Affirmed.