**JESCO, INC., Appellant (CO–84–508) Plaintiff (CO–84–542 & C2–84–946),**

**v.**

**HOME LIFE INSURANCE COMPANY, Respondent,**

**Central Northwestern National Bank of Minneapolis, et al., Defendants,**

**Viking Automatic Sprinkler Company, et al., Appellants (CO–84–508),**

**C.S. McCrossan, Inc., Appellant (CO–84–542),**

**Egan, Field & Nowak, Inc., Appellant (C2–84–946).**

**Nos. CO–84–508, CO–84–542 and C2–84–946.**

Court of Appeals of Minnesota.

Oct. 30, 1984.

Review Denied Feb. 5, 1985.

---

James R. Dorsey, William D. Hull, O'Connor & Hannan, Minneapolis, for Jesco, Inc. and Viking Automatic Sprinkler Co. et al.

Thomas J. Rooney, Rooney & Neilson, Ltd., St. Paul, for C.S. McCrossan, Inc. and Egan, Field & Nowak, Inc.

Michael D. Quayle, Green, Merrigan, Johnson & Quayle, Stephen H. Cohen, Robins, Zelle, Larson & Kaplan, Minneapolis, for Home Life Ins. Co.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and CRIPPEN, JJ.

## OPINION

LESLIE, Judge.

These three actions were brought to determine the amount and priority of respondent's mortgage and appellants' mechanic's liens. The actions were bifurcated for trial on the issues of priority and amounts of the liens. After a hearing on the priority issue, the trial court issued findings of fact and conclusions of law setting appellants' mechanic's liens ahead of respondent's mortgage. Respondent moved for amended findings and the trial court granted its motion and reversed the original order. Appellants' three separate appeals are consolidated for consideration by this Court.

## FACTS

In 1979 G.T. Mork & Co., Inc. (Mork) began preparations to develop two lots it owned in Brooklyn Park, Minnesota. In June 1979 Mork contracted with appellant Egan, Field & Nowak for surveys of two building sites on the lots. Egan, Field & Nowak's surveyor William Bell conducted the survey on July 6, 1979. His crew took elevations and calculated the dimensions of the buildings for grading purposes. That information was marked on 13 laths and hubs which the crew placed at the locations for the buildings' corners. The laths were 1" x ¼" stakes 3' long which were pounded into the ground so that 24" to 30" of the laths stuck out of the ground. At the top of the lath the surveying crew tied strips of red fabric to increase the laths' visibility. Egan, Field and Nowak charged $360.00 for the survey.

*Visibility of the laths in July and September*

Bell testified that on July 6 the laths marking the east side of the building could be seen above the brush growing on the vacant lots from Welcome Avenue which bordered the lots on the East. David Bertleson, an architect for Mork, went to the lots two weeks later and located the laths. He too testified that the laths nearest Welcome Avenue were visible from the street.

Shortly before September 12, 1979, James Larson of appellant C.S. McCrossan, Inc. visited the lots to prepare an excavation estimate for the planned buildings. Larson testified that he saw the laths marking the northeast and southeast corners from Welcome Avenue. Those laths were not covered with grass or brush and could be seen from 30' to 40' away. The laths marking the western dimensions of the building, however, were covered by brush. It took him 15 to 20 minutes to find those laths. He testified that most of the laths were still there but that some of them were missing. He described the laths as roughly 30" high with faded orange ribbons tied at their tops.

*Minnesota Title's inspection on October 20*

On about October 19, 1979, Mork mortgaged the two lots to Northland Mortgage Co. The mortgage was recorded that day. The next day, Saturday, October 20, 1979, John Yurecko inspected the property for Minnesota Title Insurance Company, Northland's agent, to determine whether any mechanic's liens had priority over its mortgage. While his superior Elizabeth Graczyk was aware that the surveying work had been done, she did not inform Yurecko that an interior survey had been performed nor give him plans for the buildings. Graczyk testified that she did not then know surveying work could affect the order of priorities.

During Yurecko's inspection he walked the perimeter of the two lots looking for signs of construction. At a number of locations he took pictures with a Polaroid camera. Due to heavy brush and some culverts Yurecko did not walk the western perimeter but instead took a zig zag course along that perimeter. He testified that

during his one hour inspection he did not see the laths nor any other sign of construction. Six of those photos were introduced at trial none of which portray the entire two lots or show the laths. Other photos that were taken were lost after they were placed on Graczyk's desk.

*Visibility of laths after October 20*

On October 22, 1979, the funds secured by the mortgage were released to Mork. Sometime in the week following October 22, 1979, James Larson of McCrossan returned to the lots to begin clearing and grubbing the lots before excavating. He testified that laths were on the lots in the locations he had seen in September and that they appeared to be the same laths. The front two were not covered by brush. William Bell viewed Yurecko's photos at trial and testified that the growth on the lot was substantially the same as when he surveyed the lot and placed the laths in July.

*The trial and the trial court's initial findings*

In 1980 Mork filed Chapter 11 bankruptcy. When the bankruptcy stay was lifted, these actions were brought by the appellants on their mechanic's liens against Home Life Insurance Co., mortgagee by assignment from Northland Mortgage Co.

After a two day trial the district court gave its findings from the bench. It found in part that:

1. The laths on the east side of the building site were visible from Welcome Avenue.

2. Yurecko had inspected the lots but had failed to see the laths.

3. Minnesota Title knew of the survey when it sent Yurecko out for the inspection.

4. Had Minnesota Title exercised reasonable diligence in inspecting the lots it would have found the laths.

The district court concluded that the mechanic's liens were prior to the mortgage lien held by Home Insurance Company.

*The amended findings*

Respondent later moved for amended findings. The district court granted the motion and amended its findings to provide in part that:

1. The laths protruded 12″ to 24″ out of the ground which was overgrown with weeds and brush.

2. Yurecko had inspected the lots but failed to see the laths.

3. Minnesota Title knew only of the boundary survey when it sent Yurecko out for the inspection and had been informed by Mork that no construction had begun.

4. James Larson found the laths in both September and October but it took him 15 to 20 minutes to find the laths in September.

5. Yurecko exercised reasonable diligence when inspecting the premises for Minnesota Title.

6. The only evidence of the condition of the land on October 20, 1979 was Yurecko's testimony.

The court also indicated part of its reasoning in its memorandum:

The Court has amended Finding No. 12 to conform to the specific testimony of Mr. Larson as reflected in the Court's minutes. The inference that the hubs and laths were present on October 20, 1979, when Mr. Yurecko made his inspection has been eliminated as unnecessary in view of the Court's amendments of Findings 14 and 15. (The Court believes that such an inference could be reasonably drawn from the testimony, however).

Based on these findings the trial court concluded that Home Life's mortgage lien was prior to the appellants' mechanic's liens.

**ISSUE**

Did the trial court err by finding the surveying markers were not visible to an inspector conducting a reasonably diligent search of the property?

## ANALYSIS

The parties agree that if the surveyor's work was visible on October 20, 1979, its lien attached and is prior to the mortgage. They also agree that if the surveyor's lien is prior to the mortgage, then all other mechanic's liens are prior to the mortgage. On the other hand if the surveyor's work was not visible on October 20, 1979, then it did not attach ahead of the mortgage and the mortgage is prior.

### I. The Standard for Visibility

The mechanic's lien statute at issue dates back to the 1800's. Until 1974 it read substantially as follows:

514.05. When lien attaches; notice

All such liens [under §§ 514.01–.04], as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof. *As against a bona fide purchaser, mortgagee, or encumbrancer without notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground,* but a person having a contract for the furnishing of labor, skill, material, or machinery for such improvement, may file for record with the register of deeds of the county within which the premises are situated, or, if claimed under section 514.04, with the secretary of state, a brief statement of the nature of such contract, which statement shall be notice of his lien for the contract price or value of all contributions to such improvement thereafter made by him or at his instance.

Minn.Stat. § 514.05 (1972). Surveying work, no matter how visible did not constitute the beginning of improvement and could not operate to attach or give notice of mechanic's liens. *Anderson v. Breezy Point Estates*, 283 Minn. 490, 168 N.W.2d 693 (1969).

In an extended line of cases the supreme court set the standard to decide if improvements are visible. Improvements are visible if they would be found during a reasonably diligent inspection of property. *Wentworth v. Tubbs*, 53 Minn. 388, 55 N.W. 543 (1893); *Reuben E. Johnson Co. v. Phelps*, 279 Minn. 107, 156 N.W.2d 247 (1968). In *Kloster-Madsen, Inc. v. Tafi's, Inc.*, 303 Minn. 59, 64, 226 N.W.2d 603, 607 (1975) the court said:

The test for determining visibility is not, as Prudential argues, that the improvement, although "visible to the naked eye," must also be discernible to "the mind's eyes insofar as they tell one's mind that an improvement has been commenced." Rather, the test is whether the person performing the duty of examining the premises to ascertain whether an improvement has begun is able in the exercise of reasonable diligence to see it.

Justice Mitchell described the policy behind this test:

\* \* \* [I]t would be very unjust if the land could be afterwards swallowed up by mechanics' liens for work which had not been commenced on the ground, and of which consequently one who might buy the property or take a mortgage upon it had no notice or means of knowledge when he took his deed or his mortgage.

*Wentworth v. Tubbs*, 53 Minn. at 395, 55 N.W. at 544.

In several cases the supreme court has found reasonable diligence required a walk around the edge of the property, a "perimeter walk." *Lampert Yards, Inc. v. Thompson-Wetterling Construction & Realty, Inc.*, 302 Minn. 83, 223 N.W.2d 418 (1974); *Reuben E. Johnson Co. v. Phelps*, 279 Minn. 107, 156 N.W.2d 247. The court has not stated, however, that a perimeter walk is per se reasonably diligent. Instead the court has examined underlying circumstances in at least two cases before determining reasonable diligence. *Kloster-Madsen, Inc. v. Tafi's, Inc.*, 303 Minn. 59, 226 N.W.2d 603; *Lampert Yards v. Thompson-Wetterling Construction*, 302 Minn. 83, 223 N.W.2d 418. Those circumstances

are the condition of the property[1] and the mortgagee's knowledge of plans or improvements.[2]

*The 1974 amendment*

In 1974 the Minnesota legislature amended section 514.05 by adding two sentences to its end:

> Engineering or land surveying services with respect to real estate shall not constitute the actual and visible beginning of the improvement on the ground referred to in this section, except when such engineering or land surveying services include a visible staking of the premises. No lien shall attach for engineering of land surveying services rendered with respect to a purchaser for value if the value of those services does not exceed $250.

1974 Minn.Laws ch. 381 § 2. This amendment was the legislature's response to the court's holding in *Anderson v. Breezy Point Estates*, 283 Minn. 490, 168 N.W.2d 693, that mechanic's liens do not attach when surveying work begins even though it is visible. The amendment now charges mortgagees with notice of mechanic's liens whenever there is visible surveying work.

Appellants contend the trial court erred by amending its findings to conclude Yurecko's inspection was reasonably diligent. Appellants support their decision by attacking several of the court's findings of fact. After reviewing the record we agree.

■ First, the trial court's memorandum indicates it interpreted the reasonably diligent standard to require only a perimeter walk, apparently as a matter of law. The court, however, should have considered the condition of the property and the mortgagee's knowledge that the property had been surveyed. Before the 1974 amendment no more than a perimeter walk could be reasonably diligent since the type of improvements needed to attach mechanic's liens (excavation or erection) were by nature conspicuously visible from some distance. Now that surveying work counts too, a perimeter walk may be insufficient to reveal the visible and distinct indications of surveying work where brush or other obstacles exist.

Our review of the record leaves us convinced that the trial court also erred in finding facts and applying the perimeter walk standard. The court amended its original findings to establish three persuasive facts which find no support in the record. First, the court found the laths extended 12″ to 24″ above the ground. The only testimony placed the height at 24″ to 30″. Second, the court inaccurately found the lots were overgrown with weeds when uncontradicted testimony showed the front of the lots were fairly clear allowing three witnesses to see the laths from 30′ to 40′ away. Third, the court found James Larson searched for 15 to 20 minutes before finding laths. Larson testified that he spotted the front laths immediately and spent 15 to 20 minutes finding the back laths.

These facts present a persuasive case that the laths were visible and that Yurecko's inspection was not reasonably diligent. Yurecko admitted that he was not looking for surveying work because he was not told it had been done, and because he was not aware that it had any significance. He inspected the lot looking for excavation or for some type of erected structure. In its original findings the court held that the laths remained on the property the day of

---

1. In *Lampert Yards v. Thompson-Wetterling Construction*, 302 Minn. 83, 223 N.W.2d 418 the court mentioned the flatness of the land, but did not consider tall weeds a condition requiring more than a perimeter walk. In *Kloster-Madsen, Inc. v. Tafi's, Inc.*, 303 Minn. 59, 226 N.W.2d 603 it required inspection of the interior of a preexisting building planned for remodeling.

2. In *Kloster Madsen, infra*, the court referred to these circumstances in finding an inspector failed to find electrical work in a three story building because he was not reasonably diligent. The court also indicated that what constituted reasonable diligence depended in part on the type of improvements an inspector was alerted to find. *Compare Reuben E. Johnson Co. v. Phelps*, 279 Minn. 107, 156 N.W.2d 247 (knowledge of planned improvements alone was not notice of an actual and visible beginning of improvement).

the inspection. That finding was struck as unnecessary in the amended findings although the trial court indicated it still believed that inference was reasonable. Taking that inference and combining it with the other facts and circumstances, this court is left with the firm conviction the trial court erred when it made its amended findings.

### DECISION

The trial court erred by finding that surveying staking was not visible at the time of a mortgagee's inspection. The trial court's conclusion that respondent's mortgage is superior to appellants' mechanic's liens is reversed.