**RICHARD KNUTSON, INC.,**
**Respondent,**

v.

**WESTCHESTER, INCORPORATED, et al., Defendants,**

**United Financial Savings, F.A., Appellant,**

**Minnesota Tree, Inc., intervenor, Respondent.**

**No. C7–85–516.**

Court of Appeals of Minnesota.

Sept. 17, 1985.

Gerald L. Svoboda, Dean B. Thomson, St. Paul, for respondent Richard Knutson, Inc.

Michael D. Quayle, Minneapolis, for appellant.

Richard M. Erdall, Minneapolis for respondent Minnesota Tree, Inc.

Heard, considered, and decided by HUSPENI, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

HUSPENI, Presiding Judge.

United Financial Savings, F.A. (United) appeals a trial court judgment which determined that mechanics' liens of respondents Richard Knutson, Inc. (Knutson) and Minnesota Tree, Inc. (Minnesota Tree) were valid and superior to United's mortgage on the subject property. Knutson seeks review of its award of attorney's fees. We affirm in part and reverse in part.

## FACTS

The subject property is a parcel of realty (parcel) used for construction of a townhouse development. During the relevant time period, March 7, 1983 through June 7, 1984, the parcel was owned by non-appealing defendant Westchester, Inc. (Westchester). On March 7, 1983, Westchester executed a first mortgage on the parcel running in favor of United. That mortgage was recorded on March 8, 1983, the entire amount of the mortgage money was disbursed, and Westchester defaulted on the mortgage payments.

The parcel is bound by 122nd Street on the west. This street provides the only road access to the site. The adjacent property to the north is owned by non-appealing defendant Holloway Co., Ltd. (Holloway). 122nd Street makes a ninety degree turn at the northwest corner of the Holloway property.

Boundary and topographical survey work were performed on the parcel during the fall of 1982. As a result of this survey work, fifteen surveyor's stakes were placed on the parcel. The record indicates that at least two of the stakes were interior stakes. Others were placed along the boundary of the parcel. Soil boring was also done in the fall of 1982.

Knutson did the grading, sewers and streets for the parcel development, and asserts that it delivered a bulldozer and a truck to the parcel site on March 7, 1983. The testimony is in dispute regarding where the equipment was placed.

Minnesota Tree is a landscaping firm. They furnished the last item of labor and materials to the site on June 7, 1984.

Donald Staley, president of Westchester, testified that he saw no equipment on the site when he was there on March 14, 1983. He also testified that he saw no surveyor's stakes at that time, and that the grading and staking did not begin until March 16, 1983. He did indicate that there may have been a few soil boring stakes on the property from the 1982 soil boring work.

The project's civil engineering manager testified that surveyor's stakes were placed on the property on October 22, 24, and November 17, 1982, and that when he returned to the site on March 14, 1983 two stakes were positioned "on the street side of the project." He had no recollection whether other stakes were still in place.

Richard Knutson, sole shareholder of Knutson, testified that the equipment was delivered on March 7 to a location within the boundaries of the parcel east of 122nd Street. He testified that he was certain of the date because it was noted in his business diary, and he was certain of the location because the delivery site had been predetermined. He testified that he was present when the bulldozer was delivered, but not the scraper.

Knutson filed three liens against the parcel. The first lien statement indicated that the first item of work was performed March 21, 1983. The second lien statement indicated that the first item of work was performed March 7, 1983. Knutson asserts that the change in the second statement was made after his driver's time cards were found. A driver for Knutson, apparently present in court during Richard Knutson's testimony, corroborated Knutson's testimony regarding placement of the equipment.

Darla Bauer, an employee of the realtor with whom a listing agreement for the development was signed, testified that the surveyor's stakes were visible from the road on Thanksgiving Day, 1982.

James Raway, a professional title inspector for Dakota County Abstract Company, testified that he inspected the parcel on March 8, 1983 by walking about 100 to 250 feet into the property. He did not walk around the perimeter of the site. A photo taken by him showed a vacant lot. On cross-examination, Raway testified that a photo taken from where he said he took this particular photo should have shown large power poles in the background. The power poles were not visible in the photo. Raway did not look for surveyor's stakes. The standard form which he was required to complete did not include surveyor's stakes as a factor for which he was to check.

Francis Holloway, a non-appealing defendant and the fee owner of the parcel at the time of trial, has second and third mortgages on the property. Holloway testified that when he drove by the site during the first week of March 1983, he saw the equipment at issue on the property he owned directly north of and adjacent to the subject parcel. He did not observe any surveyor's stakes as he drove by the property at that time.

The loan closing for the parcel was conducted by attorney Reese Chezick, who represented United in the mortgage transaction. Chezick had previously been involved in clearing the title to the parcel for Westchester. Chezick secured Staley's consent prior to representing United at the loan closing. Chezick testified that he viewed the property both on March 7 prior to the closing and immediately after the mortgage was recorded on March 8, and he observed no surveyor's stakes or equipment on the site on either date. He testified at trial that he walked fifty to seventy-five feet into the property on March 7. However, in his deposition, he testified that he only walked a few feet into the property. On March 8, Chezick merely drove by the property. At trial he located on a map the position of the equipment on Holloway's property south of 122nd Street and north of the parcel. This location was close to that indicated by Holloway and

different from the location that Chezick indicated during his deposition.

A letter to Staley regarding United's disbursements to Westchester indicates that those disbursements were made to a trust fund on March 8 to pay for various services relevant to the project, including engineering and surveying services.

Relevant to this appeal, the trial court found that:

Between March 7, 1983 and June 7, 1984 the * * * lien claimants furnished labor and material to the * * * premises.

* * * * * *

During the month of October, 1982 Clark Engineering Co. at the instance and request of * * * Westchester, Inc. performed engineering services on the premises and in so doing placed visible interior and boundary survey stakes at a value exceeding the minimum required by law. In addition thereto two pieces of large equipment were placed on or near the subject property prior to the date any of the mortgages were registered, giving everyone notice of possible lien claims and suggesting further investigation.

The trial court also determined that Knutson and Minnesota Tree filed timely mechanics' liens. Knutson was awarded a $92,575 judgment against Westchester and attorney's fees of $2,500. Minnesota Tree was awarded a $3,860 judgment and attorney's fees of $750. United appealed and Knutson filed a notice of review on the issue of attorney's fees.

## ISSUES

1. Did the trial court err in determining that staking of the property constituted the first lienable improvement to the property?

2. Did the trial court err in determining that equipment was on or near the site on March 7, 1983?

3. Did the trial court err in its award of attorney's fees to respondent Richard Knutson, Inc.?

## ANALYSIS

### I.

On appeal, findings made by the trial court will not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01.

Minn.Stat. § 514.05 (1982) states in pertinent part:

As against a bona fide purchaser, mortgagee, or encumbrancer without notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground, * * *. Engineering or land surveying services with respect to real estate shall not constitute the actual and visible beginning of the improvement on the ground referred to in this section, except when such engineering or land surveying services include a visible staking of the premises.

The legislature in 1974 amended section 514.05 and added the language regarding engineering or land surveying services. Thus, the statute now charges mortgagees with notice of mechanics' liens whenever there is visible surveying work. *Jesco, Inc. v. Home Life Insurance Co.,* 357 N.W.2d 123 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Feb. 6, 1985). The test for determining visibility is:

whether the person performing the duty of examining the premises to ascertain whether an improvement has begun is able in the exercise of reasonable diligence to see it.

*Jesco,* 357 N.W.2d at 126 (quoting *Kloster-Madsen, Inc., v. Tafi's, Inc.,* 303 Minn. 59, 64, 226 N.W.2d 603, 607 (1975)).

The trial court found that engineering services were performed on the premises and visible interior and boundary stakes "at a value exceeding the minimum required by law" were placed on the property in October, 1982. United argues that the trial court clearly erred in this determination. We cannot agree.

While we find troubling the trial court's failure to make specific findings regarding the diligence exercised by Raway and the visibility of the stakes during that inspection, we do not deem that failure to be

critical. The record supports the trial court's determination. As this court noted in *Jesco:*

> Now that surveying work counts too, a perimeter walk may be insufficient to reveal the visible and distinct indications of surveying work where brush or other obstacles exist.

*Jesco,* 357 N.W.2d at 127.

The record indicates that Raway did not walk around the site perimeter. Rather, he merely walked at most 250 feet into the property. Furthermore, he indicated he did not look for surveyor's stakes. The record suggests that he was not even aware of the significance of such stakes. The standard report form which his company required him to complete did not include surveyor's stakes as one of the items for which an inspector checked.

We are also troubled regarding the lack of any specific finding as to the diligence of Chezick. Again, however, the record supports the trial court's determinations. On March 7, Chezick walked at most fifty to seventy-five feet into the property. On March 8, he merely drove by.

The record also supports a finding that some of the stakes installed in October, 1982 were still remaining in March, 1983. The surveyor testified that he specifically recalled that two stakes were visible on March 14, 1983 on the street side of the project. United's contention that only soil boring stakes were present then is a mischaracterization of the surveyor's testimony. Additionally, United's argument that soil boring stakes cannot constitute an improvement to property is of questionable merit when viewed in the context of the 1974 amendments to section 514.05.

United argues that *Jesco* is factually distinguishable because in *Jesco* interior building corners were staked and a total of thirteen stakes were on property smaller than this property. However, the *Jesco* court did not ground its decision on a distinction between interior and perimeter staking. Neither does the statute make such a distinction.

This court addresses the issue of staking in another opinion filed today. In *R.B. Thompson Lumber Co. v. Windsor Development Corp.,* 374 N.W.2d 493 (Minn.Ct. App. Sept. 17, 1985), where building pads were staked on the property, we rejected the argument that such staking was part of the overall project, not identified with the individual buildings, and therefore not properly designated as the first visible improvement. In *Thompson,* we note:

> [T]he statute does not distinguish between staking of the building pad and staking of the foundation. The staking of the building pad is sufficiently identified with the eventual erection of the building to constitute the first visible improvement.

*Thompson,* 374 N.W.2d at 497 (citation omitted).

■ We conclude that the trial court's determination that the stakes constituted the first visible improvement to the subject property is consistent with this court's decisions in *Jesco* and *Thompson* and is not clearly erroneous.

We also note Knutson's contention that United had actual notice of the engineering and surveying services prior to filing its mortgage because at the mortgage closing United disbursed substantial sums to a trust fund for engineering and surveying fees for the project. While this argument has appeal, no case in this jurisdiction has adopted such an approach to the notice issue. The trial court properly chose to rely upon the evidence set forth in its findings.

Finally, while United stated in a letter to Staley that lien waivers would be required for monies disbursed for construction labor or materials, those waivers were neither provided by Westchester nor demanded by United at closing.

## II.

■ United contends that the only support in the record for the trial court's finding that Knutson performed its first services on March 7, 1983 is the testimony of Knutson himself and his driver. Unques-

tionably, the testimony regarding the equipment is contradictory. However, two other witnesses, Holloway and Raway, testified that the two pieces of equipment were located at least near the site on March 8. Essentially, United is arguing that the trial court did not believe its witnesses. It is the trial court's duty to weigh the credibility of the testimony when it sits, as it did in this matter, as the fact finder. *See Peterson v. Johnston,* 254 N.W.2d 360, 362 (Minn.1977). We do not find the trial court's factual determinations, based on contradictory testimony, clearly erroneous.

■ The trial court found that the equipment was "on or near the subject property prior to the date any of the mortgages were registered." United objects to this finding and argues that there can be no lien if the equipment was merely near the site and not on the site. United's contention that it is improper to predicate lien priority upon such an ambiguous determination is persuasive. However, Knutson prevailed at trial because the trial court determined that the surveyor's stakes constituted the first visible improvement. Its determination regarding the location of this equipment was merely supplementary, and not critical to its decision.

### III.

Knutson contends that the trial court erred in its award of attorney's fees. We agree.

■ Reasonable attorney's fees may be awarded in a mechanic's lien case pursuant to Minn.Stat. § 514.14 (1984). *Obraske v. Woody,* 294 Minn. 105, 109, 199 N.W.2d 429, 432 (1972). The award is within the trial court's discretion, exercised after due consideration of the evidence presented on the issue and of the trial court's observations of services rendered. *Id.* The factors to be considered are:

> time and effort required, novelty or difficulty of the issues, skill and standing of the attorney, value of the interest involved, results secured at trial, loss of opportunity for other employment, taxed party's ability to pay, customary charges

for similar services, and certainty of payment.

*Jadwin v. Kasal,* 318 N.W.2d 844, 848 (Minn.1982). If no evidence is presented on the subject, the trial court should then refer to the formula in Minn.Stat. § 514.10 (1984).

The parties in our case did not submit evidence of attorney's fees during the trial. Apparently, Knutson believed that the issue of fees was reserved until the trial court determined the lien priority issue. Knutson did make a specific request to be allowed to submit evidence regarding fees. In the trial court's findings and conclusions, the trial court awarded Knutson $2,500 in attorney's fees without reference to section 514.10 or any other explanation. Subsequently, Knutson sought an amended award of attorney's fees. At that time, Knutson submitted to the court computerized timesheets and an affidavit explaining its attorney's fees.

■ Based on the record before us, it appears that the trial court made its $2,500 fees award when there was not yet any evidence before it regarding fees. Then when evidence was before it following the post-trial motions, the trial court denied the request for an amended fees award without any findings or explanation. Under the particular circumstances of this case, we are not able to determine whether the trial court applied the appropriate factors in *Jadwin.* Accordingly, we reverse and remand to the trial court for a proper consideration of the *Jadwin* factors. If the trial court finds it necessary it may receive additional testimony or affidavits on the issue of attorney's fees.

■ Knutson also seeks attorney's fees on appeal. We find no support for such an award in section 514.14. *See Standard Construction Co. v. National Tea Co.,* 240 Minn. 422, 431, 62 N.W.2d 201, 207 (1954). No attorney's fees are awarded on appeal.

### DECISION

The trial court did not err in determining that staking constituted the first lienable

improvement to the parcel, or in determining that certain equipment was on or near the subject site on March 7, 1983. The trial court erred in its award of attorney's fees. No attorney's fees are awarded on appeal.

Affirmed in part, reversed in part and remanded.