George GARDNER, d.b.a. Gardner
Plumbing, Respondent,

v.

Cathie HATCH, Appellant.

No. C2–86–1986.

Court of Appeals of Minnesota.

June 30, 1987.

Sheldon D. McRae, Jr., McRae and McRae, P.A., Bemidji, for respondent.

Sally K. Mortenson, Bemidji, for appellant.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

Cathie Hatch, a homeowner, appeals the decision of the trial court in a mechanic's lien case brought by George Gardner of Gardner Plumbing. The trial court found that Hatch had contracted with Gardner for plumbing work, that Gardner's charges for the work performed were fair and reasonable, and that Gardner was entitled to payment. The court entered judgment for Gardner in the amount of $2,643.85 plus $1,227.80 for attorney's fees and costs after allowing Hatch an offset of $70 for expenses she incurred during the plumbing job. We affirm.

## FACTS

In June 1985 appellant Cathie Hatch contacted respondent George Gardner of Gardner Plumbing to discuss a solution to the recurring problem of sewage backup in the basement of a house she owned. Gardner had previously cleaned out the sewer line in Hatch's house and had been paid by the City of Bemidji. Gardner went to Hatch's house, inspected the plumbing system and the sewer line and discussed with Hatch the work necessary to prevent future backup of city sewage into her basement.

Gardner proposed removing the old sewer line and installing a new line elevated above the flood level rim of the sewer main. The new line would enter the house through the basement wall rather than under the footings. Elevating the line would prevent backup. The cost of installing the alley-to-house pipe was $1,500. Gardner explained a lift station would have to be installed inside the basement to pump up the discharge from the basement fixtures: a sink, washing machine, washtubs, shower and toilet. Two lift station options were available: (1) a graywater system that would accommodate the kitchen sink and laundry facilities, but would not pump sewage from the basement toilet, or (2) an ejector system which would pump discharge from all basement facilities, including the toilet. The ejector system was substantially more expensive than the graywater system.

Although Hatch did not immediately decide which type of lift station to install in the basement, she did want the new sewer line from the house to the alley installed (the work necessary to stop the sewage backup). Gardner agreed to install the elevated sewer line with a branch, which would allow Hatch to decide which type of lift station she wanted later. On August 30 Gardner installed the elevated sewer line. He notified Hatch that the line from the alley to the house was completed, but that the kitchen sink upstairs would not be usable until the lift station was installed. He had already informed her tenants that they would not be able to use the kitchen sink.

The next morning the tenants learned that the upstairs shower would also be unusable until the lift station was installed. By the time Hatch reached Gardner, he was out of town for the Labor Day weekend, but he promised he would connect the upstairs shower when he installed the pump and finished the work upon his return the following Tuesday. The tenants were forced to find other accommodations for the weekend. They incurred $70 in costs, which Hatch reimbursed.

On Tuesday, while his crew was cleaning the basement, Gardner met with Hatch to

discuss the type of lift station to install and other work yet to be done. Because she was very concerned with keeping her costs down, Hatch chose the less expensive graywater pump system. Although the parties disagree on whether the details of the written contract were completed before Gardner arrived or during their discussion, both parties signed a completed contract that morning. The instrument clearly provided for the $1,500 alley-to-house elevated sewer line installation (already completed at that time) and an additional amount up to $1,800 for the lift station, venting, and other interior work.

Later that same morning Gardner began installation of the graywater pump and ancillary work. Back-ordered supplies prevented Gardner from completing the job. Although he was able to make the house liveable for the tenants that day, unavailable parts kept him from satisfying plumbing code regulations.

Before the rest of the parts arrived, Gardner sent Hatch a bill for $2,703.35 for the parts and labor on the completed work. Hatch phoned Gardner when she received the bill because she was confused by it. At that time she agreed to pay the entire amount. However, she sent Gardner a check for only $1,800 and told him she would not pay the remainder of the bill and he was not to complete the work. Although the parts he needed to complete the job had arrived, Gardner was prevented from finishing the job.

In November 1985 Hatch called Gardner to report the pump he installed did not work properly. Gardner then replaced the switch for the pump and later the entire pump at no additional charge to Hatch.

Except for the disagreement on whether the pump Gardner installed was new or used, Hatch did not dispute that she received the goods and services for which she was billed. She contended at trial that she understood total charges for the work done by Gardner would not exceed $1,500 which was later changed to $1,800. She also claimed that the work Gardner did left the house in violation of the plumbing code, that the job could have been done for less money, and that the basement toilet could have been saved for less than the cost of Gardner's bill. In addition, she claimed the value of her home decreased significantly. Therefore, she counterclaimed for negligence, breach of warranty, fraudulent misrepresentation, and failure to comply with the plumbing code. She sought $7,000 in damages. The trial court found that Gardner did the work in a workmanlike manner and that his charges were fair and reasonable. The court did not accept Hatch's testimony that she did not understand the effect of her dealings with Gardner. The court found that Gardner was entitled to recover $2,643.85 [1]—the amount of his bill less $70 reimbursement for alternate housing for Hatch's tenants—plus attorney's fees and costs of $1,277.80.

## ISSUES

1. Are the trial court's findings of fact clearly erroneous?

2. Did the trial court err by admitting evidence of a written contract between the parties?

3. Did the trial court abuse its discretion in awarding attorney's fees to Gardner?

4. Can Gardner be awarded attorney's fees for this appeal?

## ANALYSIS

### I

 It is undisputed that Hatch employed Gardner to do the plumbing work on her house and that Gardner performed the work which was listed on his bill. In addition, Gardner's testimony and the contract signed by Hatch show an agreement for a

---

1. $2703.85 less $70 is $2633.85. The figures were supplied by the trial court and the arithmetic was not questioned by the parties nor raised on appeal.

maximum cost which exceeds Gardner's bill. The trial court specifically found that the work was done in a workmanlike manner within the terms of the agreement. Hatch claims on appeal that Gardner did not install a Meyer pump as listed on the warranty, but the evidence on this is equivocal. On cross-examination at trial she admitted that it might be the Meyer's "hydromatic" pump which Gardner said he installed. The pump's brand cannot be determined from a photograph of it entered into evidence. We cannot redetermine this issue on appeal. The trial court was in the best position to judge the credibility of the witnesses and make determinations in the face of conflicting testimony. *Hollom v. Carey*, 343 N.W.2d 701, 704 (Minn.Ct.App. 1984) (citing *Tamarac Inn, Inc. v. City of Long Lake*, 310 N.W.2d 474 (Minn.1981)). The findings and conclusions are supported by the evidence and should not be overturned.

## II

Hatch contends the trial court erred in allowing evidence of a written contract between the parties. She argues that, because Gardner sued for the "reasonable value of the work done," the contract cannot be used as evidence. The mechanic's lien statute provides:

> If the contribution be made under a contract with the owner and for an agreed price, the lien as against the owner shall be for the sum agreed upon. In all other cases, it shall be for the reasonable value of the work done, and of the skill, material, and machinery furnished.

Minn.Stat. § 514.03, subd. 1(a), (b) (1986). It is clear from the statute that if there is a contract to do work at an agreed price, the amount of the lien shall be for the unpaid portion of the contract only. In all other cases the lien shall not exceed the reasonable value of services performed and materials furnished.

■ Hatch's argument fails to recognize the contract was not offered as evidence of a contract to do work at an agreed price,

but to show the work agreed upon, how the charges would be established, and that costs of $1,800 were anticipated for the interior work alone. *See E.C.I. Corporation v. G.G.C. Co.*, 306 Minn. 433, 463–67, 237 N.W.2d 627, 630 (1976) (evidence of contract allowable when recovery based on reasonable value of the portion of the project completed). The contract is especially relevant because Hatch contends that Gardner agreed to do the interior and exterior work for a total of $1,800. The contract clearly shows the parties agreed the price for the interior and exterior work combined would exceed that amount. The contract was properly admitted.

## III

The trial court has discretion to award reasonable attorney's fees as part of mechanic's lien foreclosure costs. *See Obraske v. Woody*, 294 Minn. 105, 109, 199 N.W.2d 429, 432 (1972).

> Such awards, however, should be made with caution so that property owners are not discouraged from challenging defective workmanship on the part of lienholders by excessive attorney fee awards.

*Asp v. O'Brien*, 277 N.W.2d 382, 385 (Minn.1979).

Gardner submitted legal fees of $1,740.30 and expenses of $77.30, which the trial court found to be fair and reasonable. The trial court reduced that amount by 25 percent and awarded Gardner $1,277.80, finding that amount "to be a reasonable recovery against Defendant related to the amount of the suit."

Hatch, citing *Asp*, claims that because she has substantial and valid reasons for challenging the mechanic's lien foreclosure action, the attorney's fee award was unreasonable. In *Asp* the supreme court reduced an award of attorney's fees to approximately 25 percent of the amount of lien recovery. While the supreme court agreed the full amount awarded by the trial court was reasonable, it reduced the award because the lien challenger "was

successful in partially limiting the amount of recovery" and "the amount of the lien recovered is small in comparison to the attorney's fees assessed." *Asp* at 385.

 Hatch was not successful in limiting the amount of recovery. She received only $70 as compensation for reimbursing her tenants' temporary housing expenses. Hatch did not show that the work done by Gardner was defective or poorly done. Hatch's argument that she had substantial reasons for challenging the lien is not supported by the evidence. The trial court awarded Gardner attorney's fees in an amount 25 percent less than the amount of actual fees to "relate" the recovery to the amount of the lien. The award of attorney's fees was within the trial court's discretion.

## IV

Gardner requests additional attorney's fees for this appeal. He cites the language of Minn.Stat. § 514.10 (1986), which sets out the procedure for application to release property from a mechanic's lien. That statute does refer to attorney's fees on appeal. However, "the only statutory authority for allowance of fees [in the foreclosure of a mechanic's lien] * * * is found in § 514.14 * * *." *Bierlein v. Gagnon*, 255 Minn. 143, 149, 96 N.W.2d 573, 578 (1959). Minn.Stat. § 514.14 states in part:

> Judgment shall be given in favor of each lienholder for the amount demanded and, with costs and disbursements to be fixed by the court at the trial * * *.

The Minnesota Supreme Court has stated:

> Since M.S.A. § 514.14 does not expressly provide for attorney's fees on appeal in a mechanic's lien case, *we hold that such fees are not to be allowed.*

*Standard Construction Co. v. National Tea Co.*, 240 Minn. 422, 431, 62 N.W.2d 201, 207 (Minn.1953) (emphasis added); *see also Richard Knutson, Inc. v. Westchester, Inc.*, 374 N.W.2d 485, 490 (Minn.Ct. App.1985). No attorney's fees are awarded on appeal.

## DECISION

Affirmed.