AUTOMATED BUILDING
COMPONENTS, INC.,
et al., Plaintiffs,

v.

NEW HORIZON HOMES, INC.,
et al., Defendants,

Michael F. Donnelly, et al., Appellants,

DayCo Concrete Company,
Inc., Respondent.

No. C7–93–2036.

Court of Appeals of Minnesota.

April 12, 1994.

Review Denied June 15, 1994.

James T. Swenson, Mackall, Crounse & Moore, Minneapolis, for plaintiffs.

Anthony J. Gleekel, William Christopher Penwell, Siegel, Brill, Gruepner & Duffy, P.A., Minneapolis, for defendants.

Considered and decided by SHORT, P.J., and KLAPHAKE and DAVIES, JJ.

## OPINION

SHORT, Judge.

This foreclosure action involves a combined mechanics' lien statement on multiple lots. New Horizon Homes, Inc. (developer) hired DayCo Concrete Company, Inc. (mechanic) to perform concrete, masonry, and foundation construction for a multifamily townhouse development in Woodbury. The mechanic was not paid for its labor and materials. When the mechanic attempted to foreclose its liens, several owners and mortgagees moved for summary judgment claiming the combined lien statement failed as a matter of law. The trial court denied that motion. The parties stipulated to the facts, and the trial court entered findings of fact, conclusions of law, and order for judgment in favor of the mechanic. Appellants argue the trial court erred by concluding that (1) the lots were "adjoining" on the day concrete construction began, and (2) the mechanic supplied labor and materials pursuant to a contract with the owner. In addition, appellants argue the trial court abused its discretion in the award of attorney fees. We affirm.

## FACTS

In 1990, the developer purchased parcels of unplatted land to create a multifamily townhouse development called Carver Lake

Meadows. By written agreement with the developer, the City of Woodbury approved Carver Lake Meadows as a planned unit development and plotted the property as Lots 1 through 20 of Block 1, Lots 1 through 29 of Block 2, and outlots A through G. The plan was to include 49 townhouse units in buildings containing three to six units apiece, mutual easements, covenants and private streets, and a single homeowners association to govern the entire subdivision and to own certain designated common areas. In January of 1990, the developer conveyed outlots A through E to the homeowners association pursuant to warranty deed.

In January of 1991, the developer hired the mechanic to perform concrete, masonry, and foundation construction for Carver Lake Meadows. All work was performed by the mechanic under this oral agreement and was confirmed by several written work proposals. From April 18 through October 18, 1991, the mechanic furnished concrete and masonry work to Lots 1 through 14 of Block 1 and Lots 26 through 29 of Block 2. The mechanic finished construction of foundations and masonry work on five buildings, comprising 23 of the 49 units. The mechanic ceased further work after receiving payment for work done on eight units.

On March 4 and April 3, 1991, three of the appellants, by executory purchase agreements, acquired equitable interests in Lots 2, 4, and 7 of Block 1. These vendee interests were unrecorded. Between August 23 and September 30, 1991, six appellants, including the three holding unrecorded interests, recorded ownership rights to Lots 1, 2, 4, 6, 7, and 8 of Block 1. None of the appellants sought a lien waiver from the mechanic.

On February 6, 1992, the mechanic filed a combined lien statement in the amount of $100,480.81 that included Lots 1 through 14 of Block 1 and Lots 26 through 29 of Block 2. The statement was filed within 120 days of the mechanic's last day of work. On October 9, 1992, the mechanic filed a restated lien statement for $89,211.43 that included Lots 1 through 9, and Lots 11 through 13 of Block 1, and Lots 26 through 29 of Block 2. The restated lien statement reflected additional work and services supplied, but omitted property where the lien was satisfied. The mechanic also requested attorney fees as part of its foreclosure costs. The mechanic allocated the reasonable value of labor, skill, materials, supplies and equipment, and attorney fees to the individually platted lots. Each lot was the subject of a separate foreclosure action, but those cases were consolidated into this action.

## ISSUES

I. Can closely connected lots which are physically separated by related intervening objects constitute "adjoining lots" under Minn.Stat. § 514.09?

II. Does a vendor have the status of "owner" within the meaning of Minn. Stat. § 514.09?

III. Did the trial court abuse its discretion in its award of attorney fees?

## ANALYSIS

■ The parties agree on the relevant facts. The sole issue before us is one of statutory interpretation. The construction of a statute is a question of law subject to de novo review on appeal. *Doe v. Minnesota State Bd. of Medical Examiners,* 435 N.W.2d 45, 48 (Minn.1989).

■ Mechanics' liens are purely creatures of statute and exist only within the terms of the statute. *Kirkwold Constr. v. M.G.A. Constr.,* 513 N.W.2d 241 (Minn.1994); *Dunham Assocs. v. Group Invs., Inc.,* 301 Minn. 108, 118, 223 N.W.2d 376, 383 (1974). The relevant part of the mechanics' lien statute provides:

A lienholder who has contributed to the erection, alteration, removal, or repair of two or more buildings or other improvements situated upon or removed to one lot, or upon or to adjoining lots, under or pursuant to the purposes of one general contract with the owner, may file one statement for the entire claim, embracing the whole area so improved.

Minn.Stat. § 514.09 (1992). The parties agree that the statute applies to planned unit developments as well as to single family dwellings. We are asked to decide whether

the statutory prerequisites for permitting a combined lien statement were present when the mechanic began work at Carver Lake Meadows.

## I.

■■■ Minn.Stat. § 514.09 gives a mechanic the option of filing a lien statement against each lot or a combined lien statement against multiple lots. A claimant who provides labor or materials to one tract of land is entitled to a mechanics' lien not only on the tract improved, but on all adjoining lots in common ownership. *LaValle v. Bayless*, 257 N.W.2d 283, 285 (Minn.1977); *Carr–Cullen Co. v. Cooper*, 144 Minn. 380, 392. 175 N.W. 696, 697 (Minn.1920). Improvement on two noncontiguous tracts cannot be protected by one lien statement. *See S.H. Bowman Lumber Co. v. Piersol*, 147 Minn. 300, 180 N.W. 106 (1920) (holding plaintiff may not file one lien to cover improvement of three tracts of land separated by several miles). The critical time for determining contiguity is when the claimant began construction. *LaValle*, 257 N.W.2d at 285.

Appellants argue the combined lien statement is invalid as a matter of law because the encompassed property is separated by intervening lots and a roadway. The legislature did not define the term "adjoining lots" in the statute. Appellants ask us to construe the statutory language to require all encompassed property to share a common boundary; the mechanic suggests that the parties' intent to treat the property as one tract should control how the land is platted.

Words of a statute are to be given their ordinary meaning in the absence of persuasive reasons to the contrary. Minn.Stat. § 645.08(1) (1992); *Federal Deposit Ins. Corp. v. Meyer*, — U.S. —, —, 114 S.Ct. 996, 1001, 127 L.Ed.2d 308 (1994). Webster's Dictionary defines "adjoining" as "touching or bounding at some point or on some line; near in space." Webster's 3rd New International Dictionary 27 (1986) (unabridged). The American Heritage Dictionary defines "adjoining" as "neighboring; contiguous." The American Heritage Dictionary 22 (3rd ed. 1992). Black's Law Dictionary defines "adjoining" as "touching or con-

tiguous." Black's Law Dictionary 41 (6th ed. 1990). Those definitions suggest that the spatial relationship of the tracts of land, not the parties' intended use of the property, is determinative.

■■■ The object of all statutory interpretation is to ascertain and effectuate the intention of the legislature. Minn.Stat. § 645.16 (1992); *Tuma v. Commissioner of Economic Security*, 386 N.W.2d 702, 706 (Minn.1986). We presume the legislature intends to adopt the same construction of the term "adjoining lots" as used by the Minnesota Supreme Court. Minn.Stat. § 645.17(4) (1992). Caselaw repeatedly uses "contiguous" interchangeably with the word "adjoining" in resolving issues involving combined lien statements. *LaValle*, 257 N.W.2d at 285; *Johnson v. Salter*, 70 Minn. 146, 72 N.W. 974 (1897). The lots subject to a combined lien thus need to have a close spatial relationship. The intent of the parties alone cannot subject noncontiguous parcels to a combined lien statement. *See, e.g., S.H. Bowman*, 147 Minn. 300, 180 N.W. 106, 107 (holding that although materials supplied to single owner of two parcels of property to be improved, a combined lien could not attach because the parcels were "several miles apart"); *Buckley v. Commercial Nat'l Bank*, 171 Ill. 284, 49 N.E. 617, 619 (1898) (holding that although work done on buildings with single owner under one contract, a combined lien could not attach because the buildings were on "separate and distinct" pieces of property).

On the date the mechanic began its foundation and concrete construction, Carver Lake Meadows was one development with a circumference of approximately 3,400 feet. While one city street and three commonly owned outlots were interspersed in blocks one and two, the land was platted to accommodate one planned unit development; there were no unrelated lots or intervening space dividing the land. *See Smith v. Headley*, 33 Minn. 384, 387, 23 N.W. 550, 551 (1885) (the character of the building or the need for more land to fulfill its proper use causes two or more platted lots to constitute one lot under the lien statute); *Lax v. Peterson*, 42 Minn. 214, 219–20, 44 N.W. 3, 4 (1889) (two

lots constitute one tract when treated as one tract). The character of the multifamily townhouse development, the need for open spaces, and a road between the units does not cause the lots to be noncontiguous. Our conclusion is supported by the city's treatment of the land. Because the city and the developer treated the neighboring lots as one tract of land for purposes of building, the multiple lots should be treated as one for purpose of liens accruing in consequence of building. *See Menzel v. Tubbs,* 51 Minn. 364, 368, 53 N.W. 653, 654 (1892) (lien extends to a "lot" as defined by the way the property is used rather than the way it is platted); *Miller v. Shepard,* 50 Minn. 268, 270, 52 N.W. 894 (1892) (lien may extend to two lots where the improvement contract treated them as a single tract).

■ Appellants' argument that Lot 2 did not adjoin Lot 7, and Lot 3 did not adjoin Lot 8 is hypertechnical and such an interpretation would significantly diminish the usefulness of Minn.Stat. § 514.09. Section 514.09 originally was intended to relieve a mechanic of the need to keep separate accounts when improving multiple contiguous lots. *Johnson,* 70 Minn. at 151, 72 N.W. at 975. Because the lots at issue are closely connected without unrelated intervening objects, and the concrete work was a visible improvement to the land, we conclude the multiple lots are adjoining and can be subject to a combined mechanics' lien statement. The statutory requirement of "adjoining lots" does not preclude filing a combined lien statement against multiple lots within a common development plan which are separated by related intervening objects (i.e., commonly owned space or roads) as long as the principles underlying the mechanics' lien statute are met. *See Korsunsky Krank Erickson Architects v. Walsh,* 370 N.W.2d 29, 33 (Minn.1985) (the law of mechanics' liens prevents unjust enrichment when laborers improve the property of others); *see also* Annotation, *Mechanic's Liens for Work on or Material for Separate Buildings of One Owner,* 15 A.L.R.3d 73 (1967 & Supp.1993) (discussing treatment of this situation in other jurisdictions); 2 C.J.S. *Adjoin* (1972) (the word "adjoining" may be used to mean adjacent, close or near). The concrete foundation work at Carver Lake Meadows was done on adjoining lots.

## II.

■ Appellants also argue that the combined lien statement is invalid because all owners did not agree to encumber their property. A few weeks before the commencement of the mechanic's work, three appellants bought Lots 2, 4 and 7 of Block 1 from the developer by unrecorded executory purchase agreements. Persons with executory purchase agreement interests have protectable, equitable interests in property. *Dolder v. Griffin,* 323 N.W.2d 773, 778–79 (Minn.1982); *C.W. Stark Lumber v. Sether,* 257 N.W.2d 556, 558 (Minn.1977). But a mechanic must be able to rely on the title shown on public records.

■ The developer was the registered owner of all of Carver Lake Meadows until several months after the commencement of construction. The purpose of the Torrens law is to establish an indefeasible title free from any rights or claims not registered with the registrar of titles. *In re Juran,* 178 Minn. 55, 58, 226 N.W. 201, 202 (1929), *quoted in Mill City Heating & Air Conditioning v. Nelson,* 351 N.W.2d 362, 364 (Minn.1984). Appellants' purchase agreements with the developer did not bind the land, but operated only as a contract between those parties. The eventual act of registration in August and September of 1991 affected ownership of the land, but then the mechanic's lien had already attached. *See Mill City,* 351 N.W.2d at 365 (because an unregistered purchase agreement does not bind or affect the land, unrecorded vendee interests not in possession cannot be "owners" entitled to notice under the mechanics' lien statute); *cf. C.W. Stark Lumber Co.,* 257 N.W.2d at 560 (vendee may be "owner" to whom a subcontractor must give notice where fee owner was acting primarily as contractor for vendee).

■ In addition, the terms of the executory contract for sale preclude appellants' ownership argument. When a vendor enters into an executory contract for the sale of realty which is to be improved prior to transfer of title to the vendee, the vendor is the

"owner" and may subject the property to mechanics' liens. Maurice T. Brunner, Annotation, *Mechanic's Lien Based on Contract with Vendor Pending Executory Contract for Sale of Property as Affecting Purchaser's Interest*, 50 A.L.R.3d 944 at § 3 (1973 & Supp.1993); *Home Carpet, Inc. v. Bob Antrim Homes*, 210 N.W.2d 652, 655 (Iowa 1973); *J.H. Magill Lumber Co. v. Carter*, 17 S.W.2d 581, 583–84 (Mo.1929). Appellants contracted to buy the improved land for one sum, knowing the property would be in the possession of the developer during its improvements. Because *(a)* appellants knew of the foundation work, *(b)* the record title and possession stayed with the developer, and *(c)* no lien waivers were obtained, appellants are estopped from now arguing their equitable interests affect the validity of the mechanics' lien. *See Dunham Assocs.*, 301 Minn. at 118, 223 N.W.2d at 383 ("owner" under mechanics' lien statute does not require proof of absolute ownership).

### III.

■ Reasonable attorney fees may be awarded to a successful claimant under Minn.Stat. § 514.14 (1992) as part of its foreclosure costs. *Obraske v. Woody*, 294 Minn. 105, 108, 199 N.W.2d 429, 432 (1972); *Richard Knutson, Inc. v. Westchester, Inc.*, 374 N.W.2d 485, 490 (Minn.App.1985). The amount of the award rests within the sole discretion of the trial court, and we will not reverse on appeal absent an abuse of that discretion. *Jadwin v. Kasal*, 318 N.W.2d 844, 848 (Minn.1982).

■ The trial court considered *(a)* attorney time necessary to prepare a lien case, defend against a dispositive motion, and negotiate a stipulation, *(b)* attorney skill demonstrated in the action, *(c)* difficulty and value of the issues involved, *(d)* results obtained, and *(e)* customary charges for similar services. The trial court then awarded the mechanic $27,351 as attorney fees. While there are no specific findings relating to the award, the record contains detailed time reports along with an explanatory affidavit which support the amount of the award. *Cf. Richard Knutson, Inc.*, 374 N.W.2d at 490 (reversing award for lack of findings where

reviewing court was unable to determine whether appropriate factors had been considered). Under these circumstances, we cannot say the trial court abused its discretion in its award of attorney fees.

### DECISION

The character of the townhouse development and the necessity of open space and roads amidst the units does not cause the lots to be unadjoining or noncontiguous for purposes of the lien statute. Because the lots at issue were closely connected without unrelated intervening objects and the mechanic's foundation work was a visible improvement on the ground, the multiple lots can be encompassed by a combined mechanics' lien statement under Minn.Stat. § 514.09. Appellants' unrecorded vendee interests to registered land did not prevent the developer from contracting with the mechanic for lienable work.

**Affirmed.**