[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Kevin Sullivan, doing business as Sullivan's Landscaping Service, has brought this action to foreclose a mechanic's lien of $8,425, representing the balance due for landscaping that had been done on property known as 469 Buckland Street in South Windsor during the period from September 19, 1990 to May 20, 1991. The landscaping services were requested by John Samsel, Jr. (Samsel), who had acquired the property in 1983 and who had contracted to develop and sell it as a condominium-type professional office complex, under a bond for deed dated April 2, 1990 for a total purchase price of $1,300,000 to Lawrence Andrus, a dentist, Mark Rubin, a dental surgeon, and Michael Levine, a physician, who took title to the property under the partnership name of Buckland Meadow Associates (Buckland) at a closing held on May 7, 1991.
The purchase agreement (¶ 6) provided that interior improvements were to be completed by Samsel at his "sole cost and expense . . . to a maximum allowance of $318,500.00," and that the unspent portion was to be escrowed at the time of closing. It CT Page 5252-QQQ also provided that (¶ 15) the buyer would "inspect [the premises] during construction on a biweekly basis" and notify the seller in writing of any defects within seven days of discovering them.
Buckland's defenses, as articulated in its post trial brief are, first, that the plaintiff did not satisfactorily perform the work that he had contracted to do, and, second, that Buckland "paid the prior owner and general contractor Samsel for any work that might have been done by [the] plaintiff on the property." It should be noted that the first defense as originally pleaded was that "[t]he plaintiff was fired from [the] job by the general contractor for not completing its work," but that claim was withdrawn at the close of the evidence apparently because Samsel testified categorically that he "didn't even ask them to leave, let alone throw them off."
Samsel's trial testimony in that regard was consistent with his letter of July 2, 1991 (Defendant's Exhibit 2) to the plaintiff in which he stated that Sullivan's understanding that his crew was thrown off the job on May 20, 1991 was incorrect and that Samsel's principal concern at the time was to obtain a certificate of occupancy as soon as possible. He also noted in that letter that "[a]t no time did I ever state that I would not pay you for your services."
In the course of his testimony Samsel stated that his principal concern and "[t]he most important part of this job" was the sidewalk at the entrance of the building which had to be completed before a certificate of occupancy could be issued. He also stated that "Mr. Sullivan did a very, very good job and he did complete the sidewalk. The work was acceptable. It was just the time, the time that he had took (sic) to do the job was the problem."
It is also apparent from the prior letter sent by the plaintiff to Samsel dated June 27, 1991 (Plaintiff's Exhibit J) that the delay in starting the work after the proposal had been accepted on September 19, 1990 was Samsel's failure to pay the deposit until November 9, 1990. Another delay referred to in both letters occurred later in November when, in Samsel's words, "one of the doctors did question and possibly stop the attempt to . . . remove concrete and attempt to build the brick walk."
Dr. Levine testified that he was the partner who was most CT Page 5252-RRR frequently on the site and the first of the doctors to take occupancy of the office space. Samsel stated that Levine's" concerns were that the outside was not going to be completed in time in order to get the certificate of occupancy for him to move in."
Samsel referred to Levine's "daily vigilance or visits to the site", and stated that he would keep him updated on the progress of the work, including the landscaping being done by the plaintiff. However, Levine did not recall any discussions between himself and Samsel about poor i workmanship, and he also stated that the decision to hire another contractor, Kasheta Farms, Inc., was a personal decision made by Samsel on his own.
A contractor who seeks to foreclose a mechanic's lien is entitled to recover unless his failure to complete the contract is wilful or voluntary, and the fact that he was deprived of the opportunity to complete the work and take corrective action does not convert his "default in that respect into a wilful or voluntary one." Daly Sons v. New Haven Hotel Co., 91 Conn. 280,290. Where a defendant in such an action claims damages by reason of delays in the completion of the work he will be denied recovery in the absence of proof of a contractual obligation to perform the work in a timely and expeditious manner. ChrisConstruction Co. v. May Centers, Inc., 23 Conn. App. 453, 457.
On the basis of the court's review of all of the credible evidence offered on the issue of poor workmanship or defective performance as claimed by the defendant, the court finds that the substitution of another landscaping contractor after May 20, 1991, was either the result of a misunderstanding between the parties or a conscious decision on the part of Samsel which was based on considerations other than the quality of the services performed by the plaintiff as alleged by the defendant. Accordingly, the court finds that the defendant has not sustained its burden of proof on its first special defense.
The other special defense asserted by Buckland is based on the testimony of Levine that it was Samsel's responsibility to pay all subcontractors, that Samsel was acting at all times as the general contractor, and that the defendant was entitled to rely on the lien waivers produced by Samsel at the closing held on May 7, 1991, as well as his affidavit stating that no subcontractors other than those whose names appeared on the lien waiver had lien rights against the property. Samsel also CT Page 5252-SSS testified that he was paid the full amount due under the bond for deed and continued to perform services as general contractor for Buckland after the closing in order to fully complete the project.
In Connecticut, as in most other jurisdictions, the right to a mechanic's lien attaches prior to the actual filing or giving of notice to the owner, but once the notice of lien is filed or given as required by the statute, the lien as a whole relates back to, and dates from, the time the right accrued under the statute. 53 Am.Jur.2d, Mechanics' Liens, § 247 (citing J. L.Purcell, Inc. v. Libbey, 111 Conn. 132). The lien takes priority over all conveyances subsequent to the time when labor and materials are first furnished, provided notice of the lien is filed for record and an action to enforce the lien is commenced within the applicable time periods under the statute. 53 Am.Jur.2d, Mechanics' Liens, § 272 (citing Waterbury Lumber Coal Co. v. Asterchinsky, 87 Conn. 316).
A sale of real estate by its owner after a mechanic's lien has attached but before a certificate has been filed does not affect its validity nor does it estop the lienor from subsequently foreclosing his lien to secure payment of his claim, in the absence of any evidence of acts or conduct on his part which were calculated to mislead or deceive the purchaser as to the existence of the lien. Waterbury Lumber Coal Co. v.Asterchinsky, 87 Conn. 316, 321-22. Where the purchaser was aware of the fact that the improvements which were the subject of the lien had been in progress prior to the closing and that they were substantially completed when title was acquired, "she was chargeable with notice that a lien might attach to this property for these improvements." Id.
The decision in Waterbury Lumber was based on the trial court's findings in that case that neither the lienor nor the prospective purchaser had communicated with each other at any time, that "the plaintiff knew nothing of [the] transfer at the time or before it was made," that the property was not sold clear of the plaintiff's lien, and that the conveyance was made without the plaintiff's knowledge and acquiescence. Id., 322. The underlying facts presented to the court in this case are essentially the same in that throughout the time that he was providing landscaping services, it was the plaintiff's belief that Samsel was the owner of the property, that he looked only to him for payment, that he was unaware of the closing that was held CT Page 5252-TTT on May 7, 1991, and that the transfer of title on that date was made without his knowledge or consent.
Buckland's defense of payment is based on § 49-36 (c) of the General Statutes which provides that payments made by an owner in good faith to the original contractor before notice is given to the owner extinguish the subcontractor's right to a lien on the property, is consistent with the underlying theory of Connecticut's lien laws that a subcontractor has no independent right of lien but is simply subrogated to the rights of the original contractor. Tice v. Moore, 82 Conn. 244, 248. "The subcontractor's right to a lien exists primarily through the authority conferred by the owner upon the contractor to act for him [and] it is created because the subcontractor has furnished material or labor to or for the contractor which has gone into the owner's building." J. F. Purcell, Inc. v. Libbey, 111 Conn. 132
at 137.
When a seller enters into an executory contract for the sale of realty which is to be improved prior to the transfer of title to the buyer, the seller is the "owner" and may subject the property to mechanics' liens because the buyer had "contracted to buy the improved land for one sum, knowing the property would be in the possession of the developer during its improvements."Automated Building Components, Inc. v. New Horizon Homes, Inc.,514 N.W.2d 826, 830 (Minn.App. 1994). Under such circumstances, the buyer is estopped from arguing that his equitable interests affect the validity of a mechanic's lien, because he has notice of the nature of the improvements, having contracted for them, the developer has record title and possession, and lien waivers were not obtained. Id.
Where the vendor has improved real estate and the purchaser has consented to and cooperated in the improvements pursuant to an executory contract of sale, the lien of a materialman for materials furnished the vendor is binding on both the vendor and the purchaser, notwithstanding the fact that the purchaser received and recorded the deed before the lien was filed for record and recorded. West Lumber Co. v. Gignilliat,48 S.E.2d 688, 690-691 (Ga.App. 1948). The rule is justified by public policy considerations because the lien laws could be circumvented by placing the title to land in contractors who could in turn agree to sell the lot as improved, thereby permitting the buyer to claim to be a bona fide purchaser so as to defeat the lien rights of suppliers of material and services. Id. CT Page 5252-UUU
Connecticut has unequivocally endorsed the rule that a contract for the sale of land with a completed building to be constructed thereon is a unitary contract under which the seller is the "owner" in the sense that he may subject the property to the mechanics' liens of persons contracting with him, and that if such liens are properly perfected, they bind the interest of the buyer as well as the seller. Hannan v. Handy, 104 Conn. 653; see also annot., 50 A.L.R.3d 944, 946-50. Where the contract does not provide for the buyer to take possession of the land prior to delivery of the deed and he does not do so, and a lienor contracts to furnish materials or services for the improvements, he is considered to be an original contractor rather than a subcontractor. Id. 657.
The court concludes that under the facts and circumstances of this case, the good faith payment defense is not available to the defendant because the plaintiff was a "contractor" dealing directly with Samsel, the owner-builder, rather than a subcontractor against whom that defense may be properly invoked and that the defendant, Buckland, is not, as a matter of law, an "owner" who is entitled to the protection afforded by that defense.
Accordingly, the court finds the issues for the plaintiff on the defendant's first and second defenses.
Statutory interest, attorney's fees and costs will be determined at a subsequent hearing to be held for the purpose of entering judgment on the plaintiff's complaint.
Hammer, J.